IN RE TAYLER F. ET AL.*
(SC 18280)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.**

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued February 11—officially released June 8, 2010

*Jon D. Golas,* for the appellant (respondent mother).

*Benjamin Zivyon,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney

general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Sheila A. Huddleston*, with whom was *John H. Beers*, for the minor children.

*Opinion*

KATZ, J. The underlying neglect proceeding in the present case requires us to consider whether, and under what circumstances, a child witness may be deemed unavailable for purposes of admitting the child's out-of-court statements under the residual exception to the hearsay rule when it is claimed that testifying would be psychologically harmful to the child. The respondent mother[1] appeals, upon our grant of certification, from the judgment of the Appellate Court affirming the trial court's judgments adjudicating her minor children neglected. *In re Tayler F.*, 111 Conn. App. 28, 958 A.2d 170 (2008). The sole issue in this certified appeal is whether the Appellate Court correctly concluded that the trial court properly had admitted statements made by the respondent's children under the residual exception to the hearsay rule. *In re Tayler F.*, 290 Conn. 901, 962 A.2d 128 (2009). We affirm the judgment.

The record reveals the following undisputed facts and procedural history. The respondent and her former husband (father) are the parents of Tayler F. and Nicholas F. (children). After the couple divorced in 2001, they shared custody of the children. The respondent also has an adult daughter, Melissa D., from a previous marriage. On December 7, 2004, when Tayler was eleven years old and Nicholas was nine years old, an incident

---

[1] The respondent's former husband, the father of the minor children, also was named as a respondent in the petitions, but his position and the department's position essentially were in alignment throughout the proceedings. The father did not participate in the appeal from the trial court's judgments and is not a party to this appeal. References herein to the respondent are to the mother only.

occurred in which the respondent's live-in boyfriend, William B., disciplined Tayler, in the presence of the respondent and Nicholas, by putting his hands on her shoulders, walking her to her bedroom and locking her inside.[2] As a result of the confrontation, Tayler became quite upset and did not want to remain in the respondent's house. Tayler informed her father about the incident, and, on December 8, 2004, the father contacted the Enfield police department and relayed Tayler's account of the events. Officer Gregory Skop investigated the complaint that same day, interviewing the father, the two children, the respondent and William B. As a result of information gleaned in those interviews, on December 9, 2004, Skop filed a report of suspected child abuse-neglect with the department of children and families (department). Karen Dupuis, a department social worker, was assigned to investigate the matter. Dupuis interviewed the father, the children and the respondent on December 10, 2004, and subsequently prepared an investigation protocol.

On December 14, 2004, the petitioner, the commissioner of children and families, filed neglect petitions and a motion seeking to vest temporary custody of the children with their father. The neglect petitions alleged inadequate care, failure to provide a safe, stable and nurturing environment, emotional neglect, and inadequate supervision. Supporting documents specifically alleged, inter alia, that the children had been exposed to domestic violence in their home and that the respondent had unresolved substance abuse issues that negatively impacted her ability to provide appropriate care for the children. The department also filed an affidavit from Dupuis setting forth the substance of her investigation.

---

[2] The only variation between this account and Tayler's account, through her contested hearsay statements, essentially was that William B. had grabbed her upper arms, but not to the extent of injuring her, and that she had heard him say, "f_king bitch," as he walked away from her bedroom door.

The motion for temporary custody was granted ex parte by the court. On December 22, 2004, the court sustained the orders of temporary custody by agreement of the parties.

The department assigned social workers to the case: Keri Ramsey, who initially was assigned to the case, prepared a social study report, and Lisa Butler, who later took over the case, prepared a case status report. Thereafter, the court directed David M. Mantell, a clinical psychologist, to evaluate the children, the respondent, other family members and William B., subject to the adults' consent. Mantell conducted interviews on five dates between February, 2005, and June, 2005, and, on the basis of those interviews, prepared a summary report and a more comprehensive psychological report.

Hearings on the neglect petitions were held on seven days between November 4, 2005, and September 29, 2006. On November 3, 2005, the day before hearings were to commence on the neglect petitions, the respondent filed a motion in limine seeking to preclude the admission of any out-of-court statements made by the children on the ground that they were inadmissible hearsay to which no exception applied. The court addressed the motion before hearing testimony from the department's first witness. The department and the father both contended that the motion in limine should be denied. The department argued that the statements were admissible under the residual exception to the hearsay rule, as long as the proper foundation could be laid, and that, under *State* v. *Jarzbek*, 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), the court could dispense with the respondent's right of confrontation. The department acknowledged that the rules of practice permit the court to question child witnesses in chambers, but it asserted that it did not favor that practice in a case like the present one, wherein the two parents

disputed whether the neglect had occurred and with whom custody of the children should be vested, because "bringing children in puts them in the middle of an adult situation. Very likely raises [the] probability that the children can be harmed by the very system that . . . is designed to protect them." In response to the respondent's assertion that there was no proof that the children were unavailable to testify, as necessary to invoke the residual exception, the department made an offer of proof, on the basis of a conversation that the father's attorney had had with the children's therapist that morning, that "the therapist's position is that she does not feel it would be appropriate for the children to testify, again, putting them in the middle of an adult situation, which can cause harm to them emotionally." The department contended that this risk of harm rendered the children unavailable to testify. In response, the respondent acknowledged that she had filed the motion in limine late, but requested that the court suspend the proceedings for up to one month if necessary, to allow the parties to brief this issue.

The trial court concluded that it would be inappropriate to issue a blanket exclusion of the children's out-of-court statements before knowing what the state would proffer. It therefore denied the motion without prejudice. The court also noted the untimeliness of the respondent's motion and denied her request to suspend the proceedings for additional briefing.

When the department questioned its first witness, Officer Skop, regarding the children's statements to him, the respondent objected on hearsay grounds. The department claimed that the statements were trustworthy and reliable, and stated that "one, we'll argue that [the children are] unavailable as well as the interests of justice that bringing them in, putting them in the middle of this hearing between the two parents . . . is going to be harmful to them, and I believe the father's

attorney can address that as well in that she had the conversation with the [children's] therapist." The respondent again objected, claiming that allowing this evidence through Skop would deny her the right to confront and cross-examine the children and that the department had not proven that the children were unavailable. The respondent further argued that, "[i]f they're going to claim that the children are unavailable because of some psychological reason, I'd request a hearing on that and [that it] not be done by oral argument."

In response, the father's attorney asserted that "the therapist thinks that it would be very detrimental to the children to have to come in here and testify. And I think . . . the only other alternative . . . is to put [them] in here on the [witness] stand or to have a hearing in Your Honor's chambers where you can question the children and, if you find it necessary, we could submit written questions that Your Honor could ask the children. But short of allowing this evidence in . . . through Officer Skop, then there will be no choice but to bring the children in. And [the children's therapist] expressly stated to me today that it will make the children feel guilty and will pit them against each other."

After confirming the current ages of the children, Tayler being twelve years old and Nicholas being ten, the court stated: "I cannot believe it would be in the best interest of the children to subject them to this contested hearing and cross-examination and to put them squarely in the middle between their mother and their father. I think that I would not be serving their best interest." On that basis, the court overruled the respondent's hearsay objection to Skop's testimony, concluding that, because the children's statements were trustworthy and reliable and because there was a reasonable necessity for their admission, they were admissible under the residual exception to the hearsay rule.

The department never called the children's therapist to testify. Instead, on the second day of trial, March 31, 2006, the department raised the issue of the children's ability to testify with its first witness, Mantell. The department asked Mantell whether he had formed an opinion as to whether the children should testify. The respondent objected on the grounds of: (1) relevance, because the children were not included on the state's witness list; and (2) lack of notice, because Mantell's report and the court's order did not reflect that he was going to offer an opinion on this subject. The department explained that this question related to the respondent's previous objection to the admission of the statements under the residual exception, specifically the question of the reasonable necessity. The trial court overruled the objection, and the following exchange between the department's attorney and Mantell ensued:

"Q. . . . [C]an you testify with a reasonable degree of psychological probability as to whether or not these children should testify in this action regarding their parents?

"A. Yes, I can.

"Q. What is that opinion?

"A. The opinion is that they shouldn't.

"Q. They shouldn't. Why not?

"A. I think it would be harmful to them. It would unnecessarily intensify the extent of their involvement in these matters. I think the children have already given abundant testimony that is consistent [with] multiple sources and as both parents have pointed out to me, this is the third time that the children have gone through professional interviews within the last few years on the issues of their relationships with their parents and about custody and visitation issues. That's a large amount of exposure to the adult court system, more than most

children ever have in contested custody and visitation matters and contested abuse and neglect matters. So I think it's overexposing the children. I also think the children are of a young, tender age and deserve to be protected from unnecessary intrusive questioning and exposure." Mantell later stated on cross-examination that testifying would be "very distressing to the children." On further cross-examination, Mantell acknowledged that, although courts sometimes will make a specific evaluation request to have a child interviewed for the purpose of seeing whether the child should testify, the court had not made such a specific request in the present case. The respondent offered no further objections to Mantell's opinion.

Ultimately, over various objections by the respondent, the court admitted the children's hearsay statements through: Skop's police report; the December 9, 2004 report of suspected child abuse or neglect; Dupuis' affidavit, investigation protocol and testimony; Ramsey's social study; Butler's case status report; and Mantell's summary report and psychological report.[3] These statements reported that the children had: witnessed domestic violence between the respondent and William B., as well as a violent encounter between William B. and an acquaintance; witnessed substance abuse by the respondent and William B., which included operating a vehicle while intoxicated with the children in the car; and been dragged, slapped and called epithets. See *In re Tayler F.*, supra, 111 Conn. App. 31–34 (setting forth allegations in detail). The children never testified. The department also offered testimony from the respon-

---

[3] We note that, after her objection to Skop's testimony, the respondent made general hearsay objections to the admission of other statements of the children without specifically renewing her objection on the ground of their unavailability. Nonetheless, we view these objections as having adequately preserved challenges to their admission because the trial court's conclusion as to the unavailability of the children necessarily would apply to all of their hearsay statements.

dent's adult daughter, Melissa D., regarding, inter alia, the respondent's alcohol abuse, as well as statements by the respondent and William B. and Skop's observations of William B. regarding the couple's alcohol use.

The trial court found that the children had witnessed domestic violence between the respondent and William B., as well as substance abuse by the couple, and had been subjected to physical and verbal abuse by them. The court further found that the respondent had placed her relationship with William B. above hers with her children and had not provided them with proper supervision. Therefore, the court found that the children, as of the date of the petitions, were neglected. The court ordered that the respondent and the father have joint custody of the children, that their primary residence would be with their father and that the respondent was entitled to a minimum of five hours of supervised visitation each week.

The respondent appealed from the trial court's judgments to the Appellate Court, claiming that the trial court improperly had admitted: (1) Mantell's testimony regarding whether the children should testify in court, for lack of notice; (2) hearsay evidence of the children's statements, as well as the statements of the children's father and other persons; and (3) evidence of the children's credibility. Id., 31. In light of issues raised at oral argument, the Appellate Court ordered the parties to submit supplemental briefs to address General Statutes § 46b-135 (b)[4] and *Crawford* v. *Washington*, 541 U.S.

[4] General Statutes § 46b-135 (b) provides: "At the commencement of any proceeding on behalf of a neglected, uncared-for or dependent child or youth, the parent or parents or guardian of the child or youth shall have the right to counsel, and shall be so informed by the judge, and that if they are unable to afford counsel, counsel will be provided for them. Such parent or guardian of the child or youth shall have the rights of confrontation and cross-examination."

36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004),[5] in connection with the respondent's claim that the admission of the children's hearsay statements had violated her right to confront and cross-examine witnesses. *In re Tayler F.*, supra, 111 Conn. App. 47 n.8.

In a divided opinion, the Appellate Court affirmed the judgments. Id., 31; see id., 61 (*Lavery, J.*, dissenting). With respect to the children's hearsay statements, the Appellate Court majority concluded that the trial court had not abused its discretion in admitting the statements under the residual exception. Id., 49. The majority reasoned that, because the trial court had been "presented with sufficient information to decide that the children would be harmed if called to testify against the respondent in a contested hearing"; id., 48–49; the trial court reasonably could have concluded that the children were unavailable and, therefore, that the statements were reasonably necessary. Id. The majority further concluded that *Crawford* was inapplicable to neglect proceedings and that the children's properly admitted statements did not violate the respondent's right to confront and cross-examine witnesses under § 46b-135 (b). Id., 47–48 n.8. This court thereafter granted the respondent's petition for certification to appeal on the issue of whether the Appellate Court correctly concluded that the trial court properly had admitted the children's statements under the residual exception to the hearsay rule. *In re Tayler F.*, supra, 290 Conn. 901.

On appeal, the respondent claims that the Appellate Court improperly concluded that the trial court had had an adequate basis to find that the children were

---

[5] In *Crawford* v. *Washington*, supra, 541 U.S. 53–54, the United States Supreme Court held that the confrontation clause of the sixth amendment to the federal constitution bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."

unavailable to testify and, therefore, that there was a reasonable necessity for the admission of their hearsay statements. The respondent also claims that the Appellate Court's interpretation and application of the residual exception to the hearsay rule is in contravention of her right of cross-examination and confrontation pursuant to § 46b-135 (b) and her constitutional right to due process. We reject each of these claims.

I

The respondent first claims that the trial court improperly admitted the children's hearsay statements under the residual exception to the hearsay rule because the court was not presented with evidence of either specific facts from which their unavailability could be found or efforts made to have them available to testify. The respondent points to cases in which courts have found witnesses to be unavailable on the basis of evidence that they lacked recall of the pertinent facts or that they physically were unable to testify, suggesting that these cases provide the necessary parameters. She further contends that it was improper for the trial court to conclude that the children were unavailable on the basis of the department's offer of proof at oral argument—representations of the opinion of the children's therapist—and that the subsequent evidence produced in the form of Mantell's opinion did not fulfill this offer of proof because: the children's therapist never testified; Mantell's testimony was not part of the offer of proof; and Mantell acknowledged that the court had not ordered him to evaluate whether the children should testify. The respondent also contends that, given these facts, it was improper for the trial court not to meet with the children to assess their availability or to consider alternative measures to obtain their testimony outside of the courtroom, as

provided by Practice Book § 32a-4.[6] We disagree with the respondent's contentions.

We are guided by the following general principles. "[O]ut-of-court statements offered to establish the truth of the matter asserted are hearsay. Such statements generally are inadmissible unless they fall within an exception to the hearsay rule. A hearsay statement that does not fall within one of the traditional exceptions to the hearsay rule nevertheless may be admissible under the residual exception to the hearsay rule provided that [1] the proponent's use of the statement is reasonably necessary and [2] the statement itself is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule. Conn. Code Evid. § 8-9; accord *State* v. *Hines*, 243 Conn. 796, 809, 709 A.2d 522 (1998)." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 727, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L.

---

[6] Practice Book § 32a-4 provides in relevant part: "(b) Any party who intends to call a child or youth as a witness shall first file a motion seeking permission of the judicial authority.

"(c) In any proceeding when testimony of a child or youth is taken, an adult who is known to the child or youth and with whom the child or youth feels comfortable shall be permitted to sit in close proximity to the child or youth during the child's or youth's testimony without obscuring the child or youth from view and the attorneys shall ask questions and pose objections while seated and in a manner which is not intimidating to the child or youth. The judicial authority shall minimize any distress to a child or youth in court.

"(d) The judicial authority with the consent of all parties may privately interview the child or youth. Counsel may submit questions and areas of concern for examination. The knowledge gained in such a conference shall be shared on the record with counsel and, if there is no legal representative, with the parent.

"(e) When the witness is the child or youth of the respondent, the respondent may be excluded from the hearing room upon a showing by clear and convincing evidence that the child or youth witness would be so intimidated or inhibited that trustworthiness of the child or youth witness is seriously called into question. In such an instance, if the respondent is without counsel, the judicial authority shall summarize for the respondent the nature of the child's or youth's testimony."

Ed. 2d 428 (2006). It is important to underscore that, in the present case, the respondent does not challenge the trial court's determination that the children's hearsay statements were trustworthy and reliable, only its determination that there was a reasonable necessity for admitting them into evidence.

We review the trial court's conclusion regarding reasonable necessity for the admission of the hearsay statements under an abuse of discretion standard. *State* v. *Saucier*, 283 Conn. 207, 219, 926 A.2d 633 (2007); see, e.g., *State* v. *Skakel*, supra, 276 Conn. 728. To the extent, however, that the respondent challenges the proper standard and procedures used by the trial court in making this determination, we apply plenary review. *State* v. *Saucier*, supra, 219.

"The requirement of reasonable necessity is met when, unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead *or otherwise unavailable,* or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources." (Emphasis added; internal quotation marks omitted.) *State* v. *Skakel*, supra, 276 Conn. 727–28. "The party moving for admission of a statement of an unavailable witness has the burden of proving the declarant's unavailability." *State* v. *Sanchez*, 25 Conn. App. 21, 24, 592 A.2d 413 (1991); accord *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 754, 680 A.2d 301 (1996).

In civil and criminal cases, this court has identified common situations in which a declarant will be deemed unavailable; see *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 238 Conn. 755; *State* v. *Frye*, 182 Conn. 476, 481–82 n.3, 438 A.2d 735 (1980); one of which

is mental illness or infirmity.[7] Cf. *In re K.U.*, 140 P.3d 568, 575 and n.7 (Okla. App. 2006) (trial court's finding that requiring child to testify in open court would be too traumatic rendered child unavailable under statute providing that "a witness is unavailable when the declarant is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity"). Neither this court nor the Appellate Court specifically has addressed the issue of whether psychological harm from testifying can render a child an unavailable witness for purposes of the residual exception to the hearsay rule. Cases from both courts, however, shed considerable light on both the substantive and procedural questions raised by the respondent.

We first turn to *State* v. *Jarzbek*, supra, 204 Conn. 683. Although *Jarzbek* involved a criminal, rather than juvenile, proceeding, its analysis is an important starting point for two reasons: first, it is the only case to explore the underlying assumptions regarding harm to children from testifying and to craft an evidentiary standard in light of those assumptions; and second, dispositions in neglect proceedings also can infringe upon a constitutional interest, the right to family integrity. See *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 283, 455 A.2d

---

[7] In *State* v. *Frye*, supra, 182 Conn. 481–82 n.3, this court recognized five of the most common situations in which the declarant will be deemed unavailable for the purposes of certain hearsay exceptions: "Unavailability as a witness includes situations in which the declarant—(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or (3) testifies to a lack of memory of the subject matter of his statement; or (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . [or testimony] by process or other reasonable means." (Internal quotation marks omitted.) Accord Practice Book § 40-56.

1313 (1983) (noting that, "[i]n administering [the legislature's] policy [to protect children under General Statutes § 17-38a (a)], courts and state agencies must keep in mind the constitutional limitations imposed on a state which undertakes any form of coercive intervention in family affairs"); see also *In re Juvenile Appeal (84-AB)*, 192 Conn. 254, 261, 471 A.2d 1380 (1984) ("[d]isposition in a neglect petition may take one of a number of forms, including return to parents, return to parents with a protective order, foster care placement, or the initiation of proceedings to terminate parental rights"); but see *In re Juvenile Appeal (84-AB)*, supra, 266–67 ("An adjudication of neglect is not a basis per se for termination of parental rights. . . . While much of the evidence on which a finding of neglect on a neglect petition has been based may also be some evidence concerning the [same ground alleged] in a termination of parental rights petition, the trial court must examine such evidence ab initio and in a new light . . . [wherein] each element of the statute must be proved by clear and convincing evidence." [Citations omitted.]).

In *State* v. *Jarzbek*, supra, 204 Conn. 684, the issue before this court was "whether, in a criminal prosecution involving alleged sexual abuse of children, a minor victim may testify through the use of a videotape made outside the physical presence of the defendant." The defendant had asserted that this procedure violated his constitutional right of confrontation, whereas the state had asserted that the defendant's right was outweighed by the state's parens patriae interest in protecting child victims of abuse from being revictimized by the judicial process. The court began with the proposition that "[t]he United States Supreme Court has recognized that competing interests 'may warrant dispensing with confrontation at trial.' " Id., 693. Notably, the court quoted *Ohio* v. *Roberts*, 448 U.S. 56, 64, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), for this proposition, which, prior to

being largely overruled by *Crawford* v. *Washington*, supra, 541 U.S. 36, had held that hearsay from an unavailable declarant constitutionally could be introduced as long as there was an "adequate 'indicia of reliability' " or "particularized guarantees of trustworthiness." *Ohio* v. *Roberts*, supra, 66. Although this court "acknowledge[d] that protecting the physical and psychological well-being of children is a compelling state interest"; *State* v. *Jarzbek*, supra, 701; it also noted that "it is by no means clear that sexually abused children are harmed, psychologically or otherwise, by the experience of testifying in the presence of their alleged abusers. To date, there is no empirical data that unequivocally supports the state's sweeping generalization that minor victims are inevitably traumatized by that experience. To the contrary, experts in child psychology who have studied sexually abused children are divided on the issue of whether they suffer undue trauma and further harm in facing the accused at trial. . . . Moreover, recent studies indicate that some minor victims actually benefit from their participation in proceedings that give them a sense of power over those who have violated them and afford them a long awaited opportunity to achieve vindication." (Citations omitted.) Id., 702.

The court in *Jarzbek* therefore rejected a per se rule and instead adopted a middle ground position: "We conclude that, in criminal prosecutions involving the alleged sexual abuse of children of tender years, the practice of videotaping the testimony of a minor victim outside the physical presence of the defendant is, in appropriate circumstances, constitutionally permissible. Our holding that appropriate circumstances may warrant a departure from strict compliance with confrontation requirements does not, however, signal a relaxation of the underlying evidentiary requirement that appropriate circumstances be proven to exist. We

emphatically reject the proposal of the state that, in every case allegedly involving the sexual abuse of children, we should presume that the credibility of a minor victim's testimony will be improved by excluding the defendant from the witness room during that [witness'] testimony. There is no constitutional justification for automatically depriving all criminal defendants of the right of physical confrontation during the videotaping of a minor victim's testimony. We instead mandate a case-by-case analysis, whereby a trial court must balance the individual defendant's right of confrontation against the interest of the state in obtaining reliable testimony from the particular minor victim in question." Id., 704.

The fact that *Jarzbek* was a criminal case undoubtedly had a significant bearing on the heightened evidentiary standard prescribed. See id., 704–705 (requiring evidentiary hearing at which state must demonstrate by clear and convincing evidence "that the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question"). In termination of parental rights cases and neglect proceedings, however, the Appellate Court also has affirmed trial court decisions precluding parents from calling their children as witnesses, either by way of direct examination or examination by the court in chambers, when there was expert testimony that the children would be harmed by testifying. See *In re Brandon W.*, 56 Conn. App. 418, 425–27, 747 A.2d 526 (2000); *In re Lauren R.*, 49 Conn. App. 763, 780, 715 A.2d 822 (1998). Although the Appellate Court did not impose the heightened burden of proof set forth in *Jarzbek*, these cases appear consistent with the court's view in *Jarzbek* that a case-by-case determination on the basis of evidence regarding the effect that testifying would have on the particular child must be provided

rather than reliance on a generalization that abused or neglected children necessarily will be harmed by testifying.

In these proceedings, the Appellate Court had relied in part on the rationale that "the testimony of abused children require[s] special consideration." (Internal quotation marks omitted.) *In re Brandon W.*, supra, 56 Conn. App. 426; *In re Lauren R.*, supra, 49 Conn. App. 779. Consistent with this rationale, the Appellate Court has concluded that the residual exception to the hearsay rule, while generally invoked "only in exceptional circumstances . . . is particularly well suited for the admission of statements by victims of child abuse and has been used in federal and state courts for this purpose." (Citation omitted.) *State* v. *Dollinger*, 20 Conn. App. 530, 540, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990); accord *Doe* v. *Thames Valley Council for Community Action, Inc.*, 69 Conn. App. 850, 854, 797 A.2d 1146, cert. denied, 261 Conn. 906, 804 A.2d 212 (2002). Unavailability has been established under this exception when it was undisputed that the child lacked recall of the events; see *State* v. *Aaron L.*, 272 Conn. 798, 819, 865 A.2d 1135 (2005); *Doe* v. *Thames Valley Council for Community Action, Inc.*, supra, 855; and when the child was deemed incompetent to testify. *State* v. *Dollinger*, supra, 539.

Finally, we note that, according to one treatise on this subject: "For a small number of children, testifying poses a risk of psychological injury. The law does not close its eyes to this possibility, and, in exceptional cases, the threat of psychological harm renders children unavailable. . . . For a finding of psychological unavailability, expert testimony is often helpful, although it is not always necessary. Lay testimony, particularly from parents or other caretakers, often provides insight into the probability of harm." 2 J. Myers, Evidence in Child, Domestic and Elder Abuse Cases

(2005) § 7.18 [G], pp. 621–22. The treatise also recognizes that the trial court may, but is not required to, speak to the child directly to ascertain the impact of testifying. Id., p. 622.

A survey of other jurisdictions reveals only a handful of cases raising the issue of unavailability of a child due to psychological harm in a noncriminal context.[8] See *Townsley* v. *Dept. of Child Services*, 848 N.E.2d 684, 688 (Ind. App. 2006) (citing statute, in adjudication of child in need of services, under which court may find child unavailable as witness when, inter alia " 'a psychiatrist, physician, or psychologist has certified that the child's participation in the proceeding creates a substantial likelihood of emotional or mental harm to the child,' " but declining to reach issue of availability because trial court improperly failed to hold separate hearing to determine admissibility of statements before making neglect determination); *In re O.A.W.*, 335 Mont. 304, 310, 153 P.3d 6 (2007) ("The District Court set forth in the record the reasons it determined the children were unavailable as witnesses. Its central finding was that it would be extremely traumatic for the children to face their parents to talk about the issue of their abuse and that it could have an adverse effect on their therapy."); *In re K.U.*, supra, 140 P.3d 575 (trial court's finding, after questioning child in camera, on record, that requiring child to testify in open court would be

---

[8] The paucity of cases may evidence a disfavor of applying this rule outside the criminal context or may be explained in part by rules in numerous jurisdictions that do not require the child declarant to be unavailable. See M. Raeder, "Domestic Violence, Child Abuse, and Trustworthiness Exceptions After *Crawford*," 20 Crim. Just. 24, 33 (Summer 2005) ("[W]hen a child is the declarant, virtually every state has a child hearsay exception, or uses a catch-all to permit hearsay that would otherwise be barred. Twenty states allow for such exceptions regardless of whether the child witness is or is not available to testify; four states allow the exceptions only if the child is available to testify; and eight states allow the exceptions only if the child is unavailable to testify.").

too traumatic rendered child unavailable); *C.E.* v. *Dept. of Public Welfare*, 917 A.2d 348, 354 (Pa. Commw. 2007) (discussing child hearsay statute under which, prior to concluding child is unavailable to testify, court must determine whether "testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate"; determination is made by court either observing and questioning child or hearing "testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting" [internal quotation marks omitted]); *In re S.A.K.*, 67 P.3d 1037, 1040 (Utah App. 2003) (citing rule under which recorded statements in abuse, neglect, or dependency proceedings are admissible if, inter alia, child is unavailable, which requires "a determination, based on medical or psychological evidence or expert testimony, that the child would suffer serious emotional or mental strain if required to testify at trial" [internal quotation marks omitted]). Although the conduct at issue in such cases usually has involved sexual abuse, it appears that the rules applied were not limited to that context.

Consistent with these authorities and our jurisprudence, we conclude that a trial court properly may conclude that a child is unavailable if there is competent evidence that the child will suffer psychological harm from testifying. The court's determination must be based, however, on evidence specific to the child and the circumstances, not a generalized presumption that testifying is per se harmful.[9] We further conclude that,

---

[9] Commentators confirm that the status of expert opinion since this court's decision in *State* v. *Jarzbek*, supra, 204 Conn. 702, still is divided as to whether it is per se harmful for child abuse victims to testify. See 1 J. Myers, Evidence in Child, Domestic and Elder Abuse Cases (2005) § 3.01; L. Goodmark, "From Property to Personhood: What the Legal System Should Do for Children in Family Violence Cases," 102 W. Va. L. Rev. 237, 291–94 (Winter 1999).

although the nature of the conduct that is the subject of the testimony may be a relevant consideration, we decline to limit the court's discretion to deem the child unavailable to only cases involving sexual abuse, as the respondent appears to suggest. This state's policies, as reflected in our statutes and rules of practice, support a broader view of the protection of child witnesses.[10] See General Statutes § 54-86g (providing special procedures for testimony of child in criminal prosecution of offense involving assault, sexual assault or abuse of child twelve years of age or younger); Practice Book § 32a-4 (providing alternative to in-court testimony and confrontation of parent for child witness, irrespective of conduct at issue). This is especially true in neglect proceedings, in which the sole focus is the safety and general well-being of the child. *In re Allison G.*, 276 Conn. 146, 158–59, 164, 883 A.2d 1226 (2005); *In re T.K.*, 105 Conn. App. 502, 505–506, 939 A.2d 9, cert. denied, 286 Conn. 914, 945 A.2d 976 (2008).

We underscore, however, that the admission of such statements must conform with our rules of evidence and practice. A child is presumed to be a competent witness and available to testify in the absence of evidence to the contrary. See General Statutes § 54-86h ("[n]o witness shall be automatically adjudged incompetent to testify because of age and any child who is

---

[10] We note the recent addition to our Code of Evidence of a "tender years" hearsay exception, which was effective January 1, 2009. See Conn. Code Evid. § 8-10 (a) (permitting admission in criminal and juvenile proceedings, under specified conditions, of "[a] statement made by a child, twelve years of age or under at the time of the statement, concerning any alleged act of sexual assault or other sexual misconduct of which the child is the alleged victim, or any alleged act of physical abuse committed against the child by the child's parent, guardian or any other person exercising comparable authority over the child at the time of the act"). This rule also permits the admission of the statement when the declarant is unavailable, but does not define that term. This rule was not in effect at the time of the proceedings in the present case and, in any event, would not have applied to all of the children's hearsay statements.

a victim of assault, sexual assault or abuse shall be competent to testify without prior qualification"); Conn. Code Evid. § 6-1 ("[e]xcept as otherwise provided by [this] Code, every person is competent to be a witness"); but see Practice Book § 32a-4 (b) ("[a]ny party who intends to call a child or youth as a witness shall first file a motion seeking permission of the judicial authority"). Should a party seek the admission of a hearsay statement of a child on the basis of psychological unavailability, the following substantive and procedural requirements must be met. If the opposing party makes a hearsay objection to the admission of the child's statement, the party seeking admission of the statement has the burden to prove the child's unavailability.[11] See *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 238 Conn. 754 ("[t]he moving party has the burden of proving the declarant's unavailability" [internal quotation marks omitted]). The trial court has discretion to accept an uncontested representation by counsel for the offering party that the child is unavailable due to psychological harm. See *State* v. *Lopez*, 239 Conn. 56, 79, 681 A.2d 950 (1996) ("it is within the discretion of the trial court to accept or to reject the proponent's representations regarding the unavailability of a declarant and the trial court's ruling will generally not be disturbed unless the court has abused its discretion"); see also *State* v. *Smith*, 289 Conn. 598, 609–10, 960 A.2d 993 (2008); *State* v. *Haye*, 214 Conn. 476, 483, 572 A.2d 974 (1990); *State* v. *Aillon*, 202 Conn. 385, 391–92, 521 A.2d 555 (1987), overruled in part on other grounds by

[11] We do not determine the best practices in this area, and conclude that additional or different procedures for child witnesses should be left to the considered attention of the rules committee of the Superior Court. In light of the interests at stake in neglect proceedings, however, we strongly recommend that the offering party provide notice well in advance of trial of its intent to offer a child's hearsay statement on the basis of psychological unavailability to allow this issue to be resolved in a manner that does not unduly delay resolution of the proceedings.

*State* v. *Butler*, 262 Conn. 167, 176, 810 A.2d 791 (2002). If the other party challenges that representation, proof of psychological harm must be adduced at an evidentiary hearing, either from an expert or another uninterested witness with knowledge of the child or from the court's in camera interview of the child, with or without counsel. See, e.g., *State* v. *Jarzbek*, 210 Conn. 396, 398–401, 554 A.2d 1094 (1989) (concluding that state had met its burden as set forth by court in previous appeal in *State* v. *Jarzbek*, supra, 204 Conn. 704–706, through testimony of clinical psychologist specializing in child abuse and neglect that was buttressed by testimony of child's mother and aunt); *In re Lauren R.*, supra, 49 Conn. App. 780 (concluding that trial court's decision not to question child in camera was not abuse of discretion when, inter alia, psychologist had testified that, in his opinion, it would be "destructive" to child witness to require her to testify). Finally, a finding of psychological unavailability requires the court to find that the child will suffer serious emotional or mental harm if required to testify. See generally 2 J. Myers, supra, § 7.18 [G] (discussing standards under various states' statutes and case law for deeming child unavailable). Although the claims in the present case do not require us to quantify further this term, we emphasize that a finding that it is not in the best interest of the child to testify is not equivalent to psychological harm.[12] Rarely will it be in a child's best interest to testify.

With these parameters in mind, we turn to the present case. In determining whether the trial court's conclusion that the children were unavailable was proper, we

---

[12] The respondent does not contend that Mantell's testimony failed to establish psychological harm, but, rather, that his testimony was not competent evidence because: (1) the department did not cite his opinion in its offer of proof; and (2) the court did not direct Mantell specifically to evaluate the children to determine whether they could testify. We note that the latter ground appears to differ from the due process notice claim the respondent raised before the Appellate Court. See footnote 13 of this opinion.

note the following facts previously recited. The respondent filed a motion in limine seeking to preclude the childrens' statements on hearsay grounds. The department contended that the children were unavailable and thereafter it and the father made an offer of proof that the children's therapist had formed an opinion that testifying would be very detrimental to the children. Following that offer and before any evidence was produced regarding the children's ability to testify, the trial court denied the motion in limine without prejudice. Thereafter, the court overruled the respondent's objection to Skop's testimony setting forth the children's hearsay statements to him, without conducting the evidentiary hearing sought by the respondent on the issue of the children's availability. The department never produced the children's therapist as a witness, but did elicit testimony from Mantell that substantively conformed to the offer of proof.

We are mindful that the conduct of the parties and the court reflects a commonly accepted past practice in such proceedings. It is clear, however, that the burden imposed and the procedures followed in the present case did not adhere to those that we have articulated in this opinion. Nonetheless, Mantell's testimony ultimately satisfied the department's offer of proof. Therefore, we cannot conclude that the respondent is entitled to prevail on this claim.

The respondent has cited no authority for her contention that Mandell could not offer an opinion on this subject solely because the department did not cite Mandell's opinion in its offer of proof. Barring lack of notice that Mantell would offer an opinion on this subject, a claim that the Appellate Court rejected[13] and that is not

[13] The Appellate Court concluded: "The respondent . . . was placed on notice that Mantell would testify about the harm the children would suffer if they were forced to testify against the respondent. The petitioner made an offer of proof that a therapist would testify regarding harm after the respondent put the availability of the children at issue. Mantell also testified

within the scope of this certified appeal, the department properly could elicit Mantell's opinion to fulfill the offer of proof. It is irrelevant that the trial court had not directed him to investigate *specifically* whether the children should testify, as long as Mantell had the expertise and factual basis to support his opinion. See *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 593, 986 A.2d 1023 (2010) ("[i]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion" [internal quotation marks omitted]). Cf. *United States* v. *Moses*, 137 F.3d 894, 899–900 (6th Cir. 1998) (trial court improperly allowed child victim to testify by way of closed circuit television when such procedure required evidence of trauma to victim from testifying and expert witness had worked with abused children but had no special skill or knowledge relating to trauma). The respondent never raised such an objection.

We also reject the respondent's contention that the trial court was required to consider alternatives to in-court testimony merely because the department and the father conceded that these alternatives existed. Although such procedures are available under Practice Book § 32a-4; see footnote 6 of this opinion; that rule does not mandate the court to consider them before deeming a child unavailable. Indeed, § 32a-4 suggests that the predicate to the measures provided therein is a request to call a child as a witness. No one made such a request in the present case. The respondent also never asked the court to consider any alternative to in-court

that [more than] four months prior to his testimony at trial, he had stated his opinion regarding the impact that having to testify in the presence of the respondent would have on the children. In addition, the respondent made no requests for additional time to prepare for cross-examination of Mantell, nor did she request an independent evaluation. Because of Mantell's discussion with the attorneys in the respondent's presence, we cannot conclude that she was unfairly surprised by Mantell's testimony." *In re Tayler F.*, supra, 111 Conn. App. 38.

testimony. Mantell's opinion did not distinguish between the effect of in-court and out-of-court testimony or testimony offered outside the respondent's presence. The respondent never asked Mantell whether the use of such procedures would alter his opinion. Therefore, we conclude that the Appellate Court correctly determined that the trial court properly had concluded that the children were unavailable, and, accordingly, admission of their statements was reasonably necessary, for purposes of the residual exception to the hearsay rule.

II

We next turn to the respondent's claims that the admission of the children's hearsay statements violated her statutory right of confrontation and cross-examination under § 46a-135 (b) and her constitutional right to due process. The Appellate Court rejected the statutory claim and did not address the issue of due process. See footnote 16 of this opinion. We reject both of these claims.

A

The interpretation of a statute is a question of law over which we exercise plenary review. *In re Jorden R.*, 293 Conn. 539, 552, 979 A.2d 469 (2009). Section 46b-135 (b) provides in relevant part: "At the commencement of any proceeding on behalf of a neglected, uncared-for or dependent child or youth, the parent or parents or guardian of the child or youth . . . shall have the rights of confrontation and cross-examination." As we previously have noted, the respondent did not seek to call her children as witnesses, and the state did not do so.

Section 46b-135 (b) does not indicate any intention to disturb the rules of evidence governing the admission of hearsay statements, which would be a change of

such significance that we would expect some indication of such an intent. See, e.g., General Statutes § 53a-46a (c) ("[a]ny information relevant to any mitigating factor may be presented by either the state or the defendant, *regardless of its admissibility under the rules governing admission of evidence in trials of criminal matters*, but the admissibility of information relevant to any of the aggravating factors set forth in subsection [i] shall be governed by the rules governing the admission of evidence in such trials" [emphasis added]); General Statutes § 54-46a (b) ("Unless waived by the accused person or extended by the court for good cause shown, [a probable cause] hearing shall be conducted within sixty days of the filing of the complaint or information in Superior Court. The court shall be confined to the rules of evidence, *except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules.*" [Emphasis added.]). The Appellate Court previously has concluded that § 46b-135 (b) is not violated when a parent is precluded from calling her child as a witness when there is competent evidence that testifying would be harmful to the child. See *In re Brandon W.*, supra, 56 Conn. App. 426; *In re Lauren R.*, supra, 49 Conn. App. 780. Although the respondent appears to equate this provision with the per se constitutional rule of *Crawford*; see footnote 5 of this opinion; precluding the department from introducing testimonial hearsay statements that otherwise satisfy the rules of evidence because that would deny her the right to confront witnesses, there is no authority for this proposition. See *In re Samantha C.*, 268 Conn. 614, 648, 847 A.2d 883 (2004) (noting that "remarks [in legislative history] evince a legislative intent to provide constitutional safeguards to children in delinquency proceedings, not to parents in neglect and uncared-for proceedings"). Therefore, the admission of the statements did not violate § 46b-135 (b).

B

Finally, we turn to the respondent's claim that admission of the hearsay statements violated her due process right under the federal constitution to confront and cross-examine witnesses.[14] Although the department and the children, through counsel, contend that the admission of the statements did not violate due process, the department also contends that this court should not review this claim because it is unpreserved and the record is inadequate for *Golding* review.[15] We reject the respondent's claim.[16]

---

[14] The respondent summarily asserts, without any independent analysis, that the admission of the statements also violated her due process rights under the state constitution. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim." (Internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 375 n.12, 933 A.2d 1158 (2007).

[15] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), permits a defendant to "prevail on [an unpreserved] claim of constitutional error . . . only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

[16] Although the respondent repeatedly asserted that admission of the statements violated her right to cross-examine and confront the children, she did not raise a due process claim before the trial court or in her appeal to the Appellate Court, and the Appellate Court majority did not address due process in its opinion. The respondent did, however, raise the issue in her supplemental brief to the Appellate Court, and the Appellate Court dissenting judge concluded, albeit summarily, that the admission of the statements violated due process. See *In re Tayler F.*, supra, 111 Conn. App. 68 (*Lavery, J.*, dissenting). Additionally, the respondent raised it in her petition for certification, and the opposing parties have briefed this issue comprehensively. Therefore, we address the merits of her claim, but read it narrowly. The Appellate Court gave the respondent the opportunity to brief two claims that she had not raised in her original appellate brief, one of which was not raised before the trial court, and this court is being asked to consider a

We begin with the relevant parameters of the respondent's claim. "Any right that a civil litigant can claim to confrontation and cross-examination is grounded in the Due Process Clauses of the Fifth and Fourteenth Amendments. See *Willner* v. *Committee on Character*, 373 U.S. 96, 103, [83 S. Ct. 1175, 10 L. Ed. 2d 224] (1963) (procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood).[17] . . .

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews* v. *Eldridge*, 424 U.S. 319, 333, [96 S. Ct. 893, 47 L. Ed. 2d 18] (1976) . . . . In reviewing a procedural due process claim, we must first determine whether a protected liberty or property interest is involved. If it is, then we must determine the nature and extent of the process due. . . .

"A parent's right to make decisions regarding the care, custody, and control of his or her child is a fundamental liberty interest protected by the Fourteenth Amendment. *Troxel* v. *Granville*, 530 U.S. 57, 65–66, [120 S. Ct. 2054, 147 L. Ed. 2d 49] (2000) . . . . That right, however, is not absolute. The welfare of children is a matter of State concern. . . . Before a parent can be deprived of her right to the custody, care, and control

claim that was raised in a supplemental brief, outside the scope of the Appellate Court's order. We also will not read the respondent's brief to raise a claim that she has not expressly made but is merely suggested by the cases she cites, namely, that due process may have required evidence that corroborated the hearsay statements.

[17] But see *Van Harken* v. *Chicago*, 103 F.3d 1346, 1352 (7th Cir.) ("There is no absolute right of confrontation in civil cases. . . . In particular cases, live testimony and cross-examination might be so important as to be required by due process, although the principal case so holding—*Goldberg* v. *Kelly*, 397 U.S. 254, 268, [90 S. Ct. 1011], 25 L. Ed. 2d 287 (1970)—may not have much life left after *Mathews* v. *Eldridge*, [424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)] . . . ." [Citations omitted.]), cert. denied, 520 U.S. 1241, 117 S. Ct. 1846, 137 L. Ed. 2d 1049 (1997).

of her child, he or she is entitled to due process of law. . . .

"A due process violation exists only when a claimant is able to establish that he or she was denied a specific procedural protection to which he or she was entitled. The type and quantity of procedural protection that must accompany a deprivation of a particular property right or liberty interest is determined by a balancing test, weighing: (1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the [s]tate's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail. *Mathews* [v. *Eldridge*, supra, 424 U.S.] 335 . . . ." (Citations omitted; internal quotation marks omitted.) *In the Interest of J.D.C.*, 284 Kan. 155, 166–67, 159 P.3d 974 (2007).

In the present case, the respondent's expansive claim renders it unnecessary to engage in this weighing process. She essentially contends that she has an *unqualified* due process right to confront and cross-examine witnesses that bars the admission of evidence otherwise properly admitted under our rules of evidence. She has provided no authority for this proposition, and we are aware of none. Outside of criminal proceedings, courts apply the pre-*Crawford* rule, under which an unavailable declarant's statements may be admitted as long as there is adequate indicia of reliability or other particularized guarantees of trustworthiness. See *Cabinet for Health & Family Services* v. *A.G.G.*, 190 S.W.3d 338, 346 (Ky. 2006) (Stating in a termination of parental rights case: "Due process requires only that the evidence be 'reliable,' and 'reliability can be inferred without more in a case where evidence falls within a firmly rooted exception to the hearsay rule.' *Ohio* v. *Roberts*, [supra, 448 U.S. 66], overruled as applied to criminal

cases by *Crawford* [v. *Washington*, supra, 541 U.S. 68–69]. See also *United States* v. *Medico*, 557 F.2d 309, 314 n.4 [2d Cir. 1977] [Admission of hearsay statements 'turns on due process considerations of fairness, reliability and trustworthiness. Experience has taught that the stated exceptions now codified in the Federal Rules of Evidence meet these conditions.'] . . . ." [Citation omitted.]); see also *Cabinet for Health & Family Services* v. *A.G.G.*, supra, 346 and nn.3 and 4 (citing jurisdictions rejecting application of *Crawford* to juvenile proceedings).

The cases cited by the respondent in her brief all address this qualification on the admission of hearsay statements, principally focusing on the need for corroboration when the declarant does not testify.[18] See also Conn. Code Evid. § 8-10 (a) (3) (B) (i) ("tender years"

---

[18] None of the cases cited by the respondent addresses declarants deemed psychologically unavailable and, in some cases, the declarants were available but not called to testify. See *In re J.D.C.*, supra, 284 Kan. 169 (noting that child was present in courtroom, although state did not call child as witness, and stating "[w]e certainly understand that requiring an opportunity to confront an *available* hearsay declarant in a [child in need of care] case decreases the risk of erroneous deprivation of the parent's fundamental right to care, custody, and control of his or her child, particularly when the declarant's hearsay statements are the sole basis for the judge's ultimate ruling" [emphasis added]); *Care & Protection of Inga*, 36 Mass. App. 660, 664, 634 N.E.2d 591 (1994) ("It is now clear that hearsay statements of a child that are contained in a report of an investigator . . . are not admissible against the parents unless the parents have a fair opportunity to rebut the statements through cross-examination of the investigator and his sources, and by other means. . . . That opportunity exists where the child testifies, or where the trial judge has other means to assess the credibility and accuracy of the child's statements. . . . No such opportunity was provided the parents in this case, for neither the child nor the author of the . . . report testified." [Citations omitted.]); *In re Cindy B.*, 122 Misc. 2d 395, 395–96, 471 N.Y.S.2d 193 (1983) (noting that, although both declarants were present in courthouse, they were not called as witnesses and, therefore, their out-of-court statement could not sustain finding of abuse without corroboration*); In re Y. B.*, 143 Vt. 344, 347, 466 A.2d 1167 (1983) (report containing "multi-layered" hearsay, largely from anonymous sources, was not properly admitted).

exception, effective January 1, 2009, requiring independent corroboration of unavailable child declarant's statement). The respondent never has contended, however, that the trial court improperly admitted the statements in the absence of corroboration. Indeed, she never has contended that the hearsay statements failed to meet the second prong of the residual exception—that "the statement is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule." Conn. Code Evid. § 8-9 (2). Rather, her sole contention is that, as long as the children were physically available and competent to testify, due process barred admission of their hearsay statements, a contention that we squarely reject.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.