Lynn, J.,
concurring specially. I agree in large measure with the majority opinion, but write separately because I have a narrower view than does the majority as to when a trial court may sustainably exercise its discretion to deny a person accused of abuse or neglect the right to call the child who is the subject of the alleged abuse or neglect as a witness at the adjudicatory hearing.
At the outset, I believe it important to emphasize the points on which I am in complete agreement with the majority. First, I agree that RSA 169-C:12 (2002) permits the petitioner to introduce reliable hearsay evidence, including statements of the allegedly abused child such as those contained in the videotaped interview of G.G., and that doing so does not make the declarants “adverse witnesses” whom the respondent is entitled to cross-examine under RSA 169-C:18, III (Supp. 2013). Second, I also agree that RSA 169-0:18, III does not give the respondent — or any other party for that matter — an “absolute right” to call any witness he chooses; both RSA 169-0:11 (2002) and the court’s inherent authority to control the proceeding before it grant the court some measure of discretion to determine whether a party has a legitimate reason to call a particular witness. To cite an obvious example, if a party can establish fact “X” through the testimony of one witness, then, absent highly unusual circumstances, the court can sustainably exercise its discretion to determine that calling ten witnesses to establish this same fact is unnecessarily cumulative and/or a waste of time even though each witness has information that is relevant and material. Cf. N.H. R. Ev. 403.
I am also in basic agreement with the non-exclusive list of factors the court encourages trial courts to consider in determining whether to permit a respondent to call an alleged child victim as a witness in the respondent’s case at the adjudicatory hearing. However, I am troubled by the implications of the majority opinion insofar as it can be interpreted to suggest that the trial court can decline to permit the respondent to call the alleged child victim for the purpose of challenging his or her credibility unless the respondent can make some kind of threshold showing that doing so will be productive. In my view, given the terms of RSA 169-C:18, III, it would constitute an unsustainable exercise of discretion for a court to require any such threshold showing if there is (1) any legitimate question concerning the child’s credibility or the validity of the allegations[1] and (2) the *200 respondent has had no prior opportunity to test the child’s credibility, unless (B) a specific showing is made by the petitioner of likely concrete harm to the child that would result from being required to testify that cannot otherwise be ameliorated by the court.[2] Only when such a showing is made would I then permit the court to balance the harm against the likely benefit to the respondent from obtaining the child’s testimony. Cf In re Tayler F., 995 A.2d 611, 626, 628 (Conn. 2010) (holding that court’s determination that child is “unavailable” to testify in a neglect proceeding so as to allow admission of child’s out-of-court statements under residual hearsay exception “must be based ... on evidence specific to the child and the circumstances, not a generalized presumption that testifying is per se harmful,” and that the court must find that the child will suffer “serious emotional or mental harm” if forced to testify; and “emphasiz[ing] that a finding that it is not in the best interest of the child to testify is not equivalent to psychological harm”); see also id. at 626 n.9 (noting that expert opinion is divided on question of whether it is per se harmful for alleged child abuse victims to testify). I recognize that protection of children is the primary purpose of RSA chapter 169-C. However, the statute also establishes an adversary process, albeit a relaxed one, as the basis through which the determination of whether a child has been abused or neglected is to be established, and the State quite obviously has no legitimate interest in protecting a child from the exposure of false or inaccurate claims of abuse or neglect.
What I find particularly troubling here is the State’s representation to the trial court of its “concerns” about having the child testify in this case, when in the next breath it announced that the child would be testifying in the related criminal case against the respondent. Apparently, any “con *201 cerns” of harm to the child that might result from her testifying in this closed-to-the-public abuse and neglect proceeding are not of sufficient magnitude to prevent her from testifying in a presumably much more contentious, open-to-the-public felony criminal trial before a jury. Perhaps there is a meritorious explanation for this seeming contradiction, but if so, it is not obvious from the record before us. While in some circumstances one possible explanation might be that the danger of harm to the child increases if she is required to testify on multiple occasions — ie., in both this abuse and neglect case and at the criminal trial — the record here raises a serious question as to whether there was any legitimate need for the State to move forward with this case prior to the criminal trial. The record indicates that the child resides with her mother, who is not accused of any wrongdoing, and that a condition of the respondent’s bail in the criminal case is that he have no contact with the child. Given these circumstances, one might reasonably ask why the rush to proceed with this case before the criminal case went to trial. Compare In re Quinn, 763 N.E.2d at 576-77 & n.4 (child’s mother also had been adjudged unfit parent and superior court refused to proceed with criminal case until care and protection proceeding concluded). Had the State chosen to wait, and had the child testified at the criminal trial and been subject to cross-examination, the transcript of the same could have been provided to the judge in this case and — as the majority seems to recognize — would have sufficed to address any possible concern about insuring that the respondent had the opportunity to test the child’s credibility.
Despite my unease for the reasons stated in the preceding paragraph, because the record is unclear as to whether the respondent testified in this case, and therefore whether there was a legitimate question as to the child’s credibility, I concur with the majority’s decision to remand this case to the trial court for reconsideration in light of the factors it identifies, including any testimony given by the child at the criminal trial.

 In determining whether there is a legitimate question as to the child’s credibility that may warrant permitting the respondent to call the child as a witness, a significant factor for the court to consider is whether the respondent has offered testimony at the hearing or elsewhere *200 that refutes the allegations of abuse or neglect. The absence of testimony by an accused parent in the RSA chapter 169-C proceeding is particularly significant on this point, since RSA 169-C:12-a (2002) makes testimony given by the parent in such proceedings inadmissible in criminal proceedings related to the alleged abuse or neglect. This statute provides additional impetus for the rule that permits the fact finder to draw an adverse inference against a litigant in a civil proceeding who chooses not to testify based on the exercise of the privilege against self-incrimination. See N.H. R. Ev. 512(d); see also In re Quinn, 763 N.E.2d 573, 578 (Mass. App. Ct. 2002).

 Among the actions the trial court may take to ameliorate the impact on the child of being required to testify are the following: (1) prohibiting overly aggressive or overtly hostile questioning by respondent’s counsel; (2) allowing the child’s guardian (or, in appropriate circumstances, a non-accused parent) to be close to or to stand by the child while testifying; (3) ordering that the examination take place in the more informal setting of the judge’s chambers rather than in the courtroom; (4) limiting the persons permitted to be present during the child’s testimony, including, if the circumstances warrant, precluding the respondent from being present during the time the child testifies; and (5) having the parties submit written questions, which the judge can then ask the child in chambers with a record but without the parties present, after which the judge shares the child’s answers with the parties.