## IN RE NOELIA M. ET AL.*

Superior Court, Judicial District of Fairfield,
Juvenile Matters at Bridgeport
File Nos. F04-CP-12-009499-A, F04-CP-12-009500-A,
F04-CP-12-009501-A

---

* In accordance with General Statutes § 46b-142 and Practice Book § 32a-7, the names of the parties are not disclosed and the records and papers of this case shall be open for inspection only to persons having a proper interest in the matter and only upon order of the court.

Memorandum filed August 19, 2014

*Gary A. Mastronardi*, for the respondent mother.

*Carolyn Signorelli*, assistant attorney general, for the petitioner.

*Juliana Romano,* for the minor child Noelia M.

*Sylvester Salcedo,* for the minor children Yanilie M. et al.

*Lee Riefinger,* guardian ad litem, for the minor children Yanilie M. et al.

STEVENS, J.

## STATEMENT OF THE CASE

On October 17, 2013, the Commissioner of the Department of Children and Families (DCF) filed petitions to terminate the parental rights of the mother, R. M., and the three fathers of the children, Noelia, Yanilie and Ivelia. These petitions allege that parental rights should be terminated on grounds of abandonment, failure to rehabilitate, and no ongoing parent-child relationship pursuant to General Statutes § 17a-112 (j) (3) (A), (B) (i) and (D), respectively.

On March 18, 2014, the respondent mother filed a motion to strike the portions of the petitions that are premised on the ground that she has failed to rehabilitate under § 17a-112 (j) (3) (B) (i). In the motion to strike, the mother contends that this statute authorizes a termination of parental rights based on a finding of neglect entered in an earlier proceeding in violation of her due process rights. DCF filed an objection to the motion on March 20, 2014. After oral argument on April 3, 2014, the court issued a decision from the bench denying the motion to strike and sustaining the objection to the motion. This memorandum articulates that ruling.

The procedural history relevant to this claim is as follows. On June 28, 2014, DCF filed amended petitions alleging that the children were neglected in that they had been permitted to live under conditions, circumstances or associations that were injurious to their well-being due to "maltreatment, including, but not limited

to, malnutrition, sexual molestation or exploitation, deprivation of necessities, emotional maltreatment or cruel punishment." After a trial on the petitions, the court issued a decision finding neglect and committed the children to DCF's custody. See *In re Noelia M.*, Superior Court, judicial district of Fairfield, Juvenile Matters at Bridgeport, Docket No. F04-CP-12-009499-A (May 6, 2013) (*Stevens, J.*). The respondent did not appeal from that judgment.

According to the respondent, the portions of the termination petitions relying § 17a-112 (j) (3) (B) (i) should be stricken because this statute allows the termination of her parental rights based on a consideration of the findings of neglect made in the earlier neglect actions and such a consideration under this statutory scheme violates her constitutional rights. DCF opposes the motion on both procedural and substantive grounds. Procedurally, the petitioner argues that the respondent's motion was not timely filed under Practice Book § 34a-8 because the respondent did not file it within fifteen days of November 14, 2013, the date on which she entered her pro forma denials of the petitions. As to the merits of the motion, DCF argues that the motion should be denied because the statutory scheme, when viewed in its entirety, comports with procedural due process requirements and it is, therefore, not unconstitutional.

## DISCUSSION

### I

DCF first objects to the motion to strike on the ground that the motion was not timely filed under the rules of practice. Practice Book § 34a-8, which applies to child protection proceedings, provides in relevant part: "Commencing on the plea date stated on the petition, pleadings shall first advance within fifteen days from the plea date stated on the petition, and any subsequent

pleadings, motions and requests shall advance at least one step within each successive period of fifteen days from the preceding pleading or the filing of the decision of the judicial authority thereon if one is required. . . ." The respondent does not dispute that she filed her motion to strike more than fifteen days after her plea date. In fact, she filed the motion four months after that date.

Thus, the court may deny the motion and decline to consider it on the ground that it was not timely filed. See *In re Charles G.*, Superior Court, judicial district of Hartford, Juvenile Matters, Docket No. H12-CP-12-014681-A (January 28, 2013) (*Burgdorff, J.*) (denying a motion to strike because it was not timely filed in accordance with Practice Book § 34a-8); see also *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 273–74, 819 A.2d 773 (2003) ("when a party properly objects to a violation of the rules of practice, the trial court may disregard the improperly raised claim if doing so is not an abuse of discretion"). On the other hand, the law is also well settled that "[o]ur rules of practice are designed 'to facilitate business and advance justice'; thus, 'they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice.' Practice Book § 1-8." *Lohnes* v. *Hospital of Saint Raphael*, 132 Conn. App. 68, 74, 31 A.3d 810 (2011), cert. denied, 303 Conn. 921, 34 A.3d 397 (2012).

In evaluating whether to exercise its discretion to excuse strict adherence to the time requirement, the court should consider the length of the delay, the reasons for the delay, its impact on the pleadings or on the prompt adjudication of the case, and the actual prejudice to the other party, especially that party's ability to respond to the motion. In this particular case, DCF has responded to the merits of the motion and

has neither claimed nor sustained any actual prejudice. The motion has not hindered the prosecution or adjudication of this case. The court concludes that the interests of justice are advanced by a consideration of the mother's constitutional claims. See generally *Citibank, N.A. v. Hellman*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-12-6013882-S (March 12, 2013) (*Hon. Alfred J. Jennings*, judge trial referee) (55 Conn. L. Rptr. 623, 624–25) (where the court summarizes recent trial court decisions on a party's failure to comply with Practice Book § 10-8).[1]

## II

Practice Book § 34a-15, which applies to child protection proceedings, provides in relevant part: "(a) Whenever any party wishes to contest . . . the legal sufficiency of the allegations of any petition, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested petition or part thereof. . . ."[2]

---

[1] Practice Book § 10-8 provides in relevant part: "Commencing on the return day of the writ, summons and complaint in civil actions, pleadings, including motions and requests addressed to the pleadings, shall advance within thirty days from the return day, and any subsequent pleadings, motions and requests shall advance at least one step within each successive period of thirty days from the preceding pleading or the filing of the decision of the judicial authority thereon if one is required . . . ."

[2] Practice Book § 34a-15 is comparable to Practice Book § 10-39, which applies to regular civil proceedings. This court and numerous other judges of the Superior Court have considered motions to strike that are filed in child protection matters pursuant Practice Book § 34a-15 under the standards that apply to such motions when they are filed pursuant to Practice Book § 10-39. See, e.g., *In re Zachariah M.*, Superior Court, judicial district of Fairfield, Juvenile Matters at Bridgeport, Docket No. F04-CP-12-009556-A (August 6, 2012) (*Stevens, J.*); *In re Lawrence W.*, Superior Court, judicial district of Hartford, Juvenile Matters, Docket No. H12-CP-11-013639-A (April 29, 2011) (*Bentivegna, J.*); and *In re Nicholas G.*, Superior Court, judicial district of Middlesex, Child Protection Session at Middletown, Docket No. D03-CP-07-002405-A (May 21, 2009) (*Bear, J.*).

"A motion to strike attacks the legal sufficiency of the allegations in a pleading." *Keane* v. *Fischetti,* 300 Conn. 395, 402, 13 A.3d 1089 (2011). "[I]t is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . The role of the trial court in ruling on a motion to strike is to examine the [complaint], construed in favor of the [plaintiff], to determine whether the [pleading party has] stated a legally sufficient cause of action." (Citation omitted; internal quotation marks omitted.) *Coe* v. *Board of Education,* 301 Conn. 112, 116–17, 19 A.3d 640 (2011). "In reviewing the sufficiency of the allegations in a complaint, courts are to assume the truth of the facts pleaded therein and to determine whether those facts establish a valid cause of action. . . . If the pleading fails to establish a valid cause of action, a court shall grant a motion to strike the offending claims." *Keane* v. *Fischetti,* supra, 402. On the other hand, "[i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Santorso* v. *Bristol Hospital,* 308 Conn. 338, 349, 63 A.3d 940 (2013).

### III

### A

As previously stated, the respondent moves to strike the portions of the termination petitions in which the commissioner seeks to terminate her parental rights under § 17a-112 (j) (3) (B) (i). She argues that this statute, as interpreted by our Appellate Court in *In re Stephen M.,* 109 Conn. App. 644, 953 A.2d 668 (2008), violates her due process rights.[3]

---

[3] The respondent does not specify whether her due process claim is premised on the state constitution or the federal constitution, or whether it is based on her substantive or procedural right to due process. The Connecticut Supreme Court has stated that it "will not entertain a state constitutional claim unless [the party asserting such claim] has provided an independent

Section 17a-112 (j) permits the Superior Court to grant a termination of parental rights petition if it finds by clear and convincing evidence that there has been a finding of neglect in a prior proceeding and when other statutory criteria have been met.[4] The Appellate Court's decision in *In re Stephen M.*, supra, 109 Conn. App. 644, controls this court's application of the statute. In *In re Stephen M.*, the Appellate Court concluded that in adjudicating a petition for the termination of parental rights, "a trial court may not reconsider the issue of neglect if the children were found to be neglected in a prior proceeding. The doctrine of collateral estoppel precludes the relitigation of the finding of neglect." Id., 657. The Appellate Court has also stated that in a proceeding for termination of parental rights on the grounds stated in § 17a-112 (j) (3) (B) (i), "the petitioner [does] not have to prove at the termination hearing that the children were neglected but only that the children had been found to be neglected in a prior proceeding."

analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deemed abandoned the [party's] claim." (Internal quotation marks omitted.) *In re Tayler F.*, 296 Conn. 524, 552 n.14, 995 A.2d 611 (2010). "In the absence of such analysis, we limit our review to her federal constitutional claim." *In re Candids E.*, 111 Conn. App. 210, 211 n.2, 958 A.2d 229 (2008). This court will similarly limit its analysis of the respondent's procedural due process claim.

[4] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . .. may grant a petition filed [to terminate parental rights] if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) termination is in the best interest of the child and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

*In re Joseph W.,* 121 Conn. App. 605, 613, 997 A.2d 512 (2010), aff'd, 301 Conn. 245, 21 A.3d 723 (2011).

According to the respondent, the court in *In re Stephen M.* erred in holding that collateral estoppel applies under § 17a-112 (j) (3) (B) (i) to relieve DCF from proving the underlying claims of neglect in a termination proceeding, and as a result, this holding creates a constitutional infirmity in the statute. The respondent reasons as follows. The United States Supreme Court has held, and the Connecticut Supreme Court has agreed, that the standard of proof that DCF is required to meet in a termination of parental rights proceeding is "clear and convincing evidence." *Santosky* v. *Kramer,* 455 U.S. 745, 748, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re Juvenile Appeal (83-AB),* 189 Conn. 58, 60, 454 A.2d 271 (1983). On the other hand, the Connecticut Supreme Court has determined that the standard of proof that applies to neglect petitions is "a fair preponderance of the evidence." (Internal quotation marks omitted.) *In re Juvenile Appeal (84-AB),* 192 Conn. 254, 263, 471 A.2d 1380 (1984). According to the respondent, *Santosky* requires that all, not some, of the elements which are to be proven by DCF in an action to terminate parental rights must be proven by clear and convincing evidence.

Thus, the respondent argues that allowing DCF to meet its burden under § 17a-112 (j) (3) (B) (i) by relying on a prior finding of neglect as authorized by *In re Stephen M.,* operates to dilute the constitutionally required standard of proof because this prior neglect finding was based on a preponderance of the evidence standard and not a clear and convincing evidence standard as required by *Santosky.*

In short, the respondent insists that the Appellate Court in *In re Stephen M.* erred in reversing the trial

court's decision in which the lower court allowed relitigation of the allegations of neglect as part of the trial on the termination petition and failed to apply the collateral estoppel doctrine to preclude such reconsideration. This error, according to the respondent, conflicts with the holding of *Santosky* and creates a due process violation. As addressed further below, the respondent also argues that *In re Stephen M.* accomplished its holding by an erroneous application of the collateral estoppel doctrine.

The short response to the respondent's arguments is that this court is bound by the Appellate Court's decision in *In re Stephen M.*[5] This court is without authority to reject or reverse a controlling decision of the Appellate Court even if the court agreed with the respondent's positions. *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 650, 6 A.3d 60 (2010) ("[a] trial court is required to follow the prior decisions of an appellate court to the extent that they are applicable to facts and issues in the case before it, and the trial court may not overturn or disregard binding precedent"). As explained below, however, the court does not agree with the respondent's arguments.

B

Collateral Estoppel Claim

The respondent essentially acknowledges and accepts that under § 17a-112 (j) (3) (B) (i) DCF is

---

[5] The court in *In re Stephen M.*, supra, 109 Conn. App. 657, explicitly held that "during the adjudication of a petition for the termination of parental rights, a trial court may not reconsider the issue of neglect if the children were found to be neglected in a prior proceeding. *The doctrine of collateral estoppel; precludes the relitigation of the finding of neglect.*" (Emphasis added.) The court did not expressly address the issue of whether the differing standards of proof exception precluded it from applying the doctrine. Nevertheless, it implicitly dismissed the idea that the exception applied in that it mentioned that although the respondent father did not dispute that the trial court found the child neglected, he argued "that the finding was not made by clear and convincing evidence." Id., 660 n.22. The court then simply

required to prove by clear and convincing evidence the existence of a finding of neglect made in a prior proceeding. She contests the application of the collateral estoppel doctrine to preclude relitigation of the underlying facts of this neglect finding. As earlier stated, the respondent argues that in *In re Stephen M.*, supra, 109 Conn. App. 644, the Appellate Court erred in concluding that the doctrine of collateral estoppel precludes the trial court from reconsidering the facts underlying a neglect adjudication in a termination of parental rights proceeding. She argues that the doctrine of collateral estoppel does not apply because the standard of proof that the petitioner is required to meet in a neglect adjudication is lower than the standard that she is required to meet in a termination proceeding. More specifically, the respondent contends that the application of the doctrine in these circumstances is contrary to the well established principle that "collateral estoppel does not preclude claims that have different burden of proof than previously decided claims." The court, as previously explained, cannot disregard the Appellate Court's decision in *In re Stephen M.*, supra, 644. Furthermore, the court rejects the respondent's position for two additional reasons: the application of the collateral estoppel principal is required by the language of the statute; and the collateral estoppel doctrine is being applied to subordinate facts, which may be proven by a lower standard of proof.

The Connecticut Supreme Court has stated that "[c]ollateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim." *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 316, 460 A.2d 1277 (1983).

added that "[t]he preponderance of the evidence standard . . . applies in a neglect proceeding." Id.

"The doctrine of collateral estoppel may be applied in determining the effect of a valid final judgment on subsequent litigation involving some of the issues determined in the former action between the parties, and the plaintiffs in the second action will be estopped from relitigation only as to those matters in issue or points controverted, upon the determination of which the finding or verdict [in the first suit] was rendered." (Internal quotation marks omitted.) *Pepin* v. *Danbury*, 171 Conn. 74, 79, 368 A.2d 88 (1976).

"The fundamental principles underlying the doctrine of collateral estoppel are well established. The common-law doctrine of collateral estoppel . . . embodies a judicial policy in favor of judicial economy, the stability of judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Citations omitted; internal quotation marks omitted.) *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 260, 773 A.2d 300 (2001).

Our courts have also recognized the exception to the doctrine that the respondent relies upon, i.e., that "[t]he application of the collateral estoppel doctrine may not be proper when the burden of proof or legal standards differ between the first and subsequent actions.[6] See,

---

[6] See § 28 of the Restatement (Second) of Judgments, which provides in relevant part: "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances . . . [as to] [t]he party against whom preclusion is sought . . . the adversary has a significantly heavier burden than he had in the first action . . . ." 1 Restatement (Second), Judgments § 28, p. 273 (1982).

e.g., *Bath Iron Works Corp.* v. *Director, Office of Workers' Compensation Programs*, 125 F.3d 18, 22 (1st Cir. 1997) ([c]ertainly a difference in the legal standards pertaining to two proceedings may defeat the use of collateral estoppel . . . *[b]ut this is so only where the difference undermines the rationale of the doctrine .* . . . The standards of each [element at issue] must be examined in detail to determine whether a difference exists and collateral estoppel bars the plaintiff's . . . causes of action." (Citations omitted; emphasis added; internal quotation marks omitted.) *Bridgeport Harbour Place I, LLC* v. *Ganim*, 131 Conn. App. 99, 155–56, 30 A.3d 703, cert. granted, 303 Conn. 904, 905, 31 A.3d 1179, 1180 (2011) (appeals withdrawn January 26 and 27, 2012).

For the following reasons, the respondent's argument relying on the differing standard of proof exception to the collateral estoppel rule fails because under this statutory scheme there is no use of differing standards of proof that undermine "the rationale of the doctrine." *Bath Iron Works Corp.* v. *Director, Office of Workers' Compensation Programs*, supra, 125 F.3d 22. In this particular case, the collateral estoppel doctrine does not emanate strictly from common-law principles, but from the actual language of the statute. Section 17a-112 (j) (3) (B) explicitly states that the finding of neglect necessary to support termination of parental rights may be made *either* "in a prior proceeding" *or* in the termination proceeding itself.[7]

Consequently, the respondent's argument that the neglect finding cannot be premised of a finding made in an earlier case is contrary to the express language

---

[7] See footnote 5 of this opinion; General Statutes § 17a-112 (j) (3) (B) (court must find by clear and convincing evidence that "the child [i] has been found by the Superior Court . . . to have been neglected or uncared for in a prior proceeding, or [ii] is found to be neglected or uncared" in the present proceeding).

of the statute. As described by the Appellate Court, the statutory scheme that applies to child protection matters is "designed in such a way that subsequent proceedings are predicated on findings made and orders issued in prior proceedings." *In re Stephen M.*, supra, 109 Conn. App. 663.

Thus, the statutory language itself invokes the collateral estoppel doctrine, and as explained by the Appellate Court, this statutory scheme promotes public policy and protects constitutional rights by recognizing the right to appeal the neglect finding made in the prior proceedings: "[t]he best interests of the children, especially their interests in family stability and permanency, support the conclusion that findings in earlier child welfare proceedings cannot be attacked collaterally in later proceedings. . . . When a parent has failed to challenge timely a court's finding, the children's strong interest in stability counsels firmly against allowing a belated appellate challenge to that temporary order. . . . [A]ppeals are obligatory so that parents may act in the best interest of their children. A grave injustice would be committed against children if a parent were permitted to appeal from a judgment of temporary custody long after they had established a stable relationship with foster parents. We therefore protect the best interest of the children by requiring patents immediately to appeal decisions that . . . interfere substantially with their family integrity. . . .

"On the basis of those same constitutional rights and public policy reasons, a trial court may not, in a subsequent proceeding, disregard and permit relitigation of, a factual or legal determination made or an issue decided in a prior proceeding. Such reconsideration is fundamentally inconsistent with the relevant statutory scheme and is unfair to the petitioner, who represents the state's parens patriae interest, as well as unfair to

the respondent parents and the children. The department sets about to do its work pursuant to the findings made and steps ordered pursuant to a trial on a neglect petition. Those findings and orders place the respondent parents on notice as to what is expected of them if they are to regain custody of their children. The best interests of children is guided by their need for permanency . . . which cannot be achieved if there is no finality to the intermediate findings made along the path to termination of parental rights. We therefore conclude that a finding that a child is neglected and abused made by a trial court when adjudicating a neglect petition constitutes an appealable final judgment. If no appeal is filed in a timely fashion, the parents may not collaterally attack those findings during a termination of parental rights trial, and the trial court adjudicating the termination of parental rights is bound by the findings made in the prior proceeding." (Citations omitted; footnote omitted; internal quotation marks omitted.) *In re Stephen M.*, supra, 109 Conn. App. 664–65.

Consequently, DCF is correct that under § 17a-112 (j) (3) (B) (i), it has the burden of proving by clear and convincing evidence that a finding of neglect was made in a prior neglect proceeding, but it is not required to prove the underlying facts on which this finding is based. Under this particular statutory scheme, the underlying circumstances of the neglect finding are *subordinate facts*, and to the extent that they may be relevant in the termination action, they need not be proven by the clear and convincing standard. As the Appellate Court explained in addressing a different, but related issue, "[t]here is no mention [in § 17a-112 (j)] of a particular standard of proof for subordinate facts that may lead the trier of fact to conclude that these three required elements [of § 17a-112 (j) (3) (B)] were proven by clear and convincing evidence." *In re Zamora S.*, 123 Conn. App. 103, 112, 998 A.2d 1279 (2010). "Our

courts have addressed squarely the issue of the requisite standard of proof for a subordinate fact in the context of criminal cases, in which the requisite standard of proof necessary to establish the required elements of the charges at issue is proof beyond a reasonable doubt. 'Where a group of facts are relied upon for proof of an element of the crime it is their cumulative impact that is to be weighed in deciding whether the standard of proof beyond a reasonable doubt has been met and each individual fact need not be proved in accordance with that standard. It is only where a single fact is essential to proof of an element . . . that such evidence must support the inference of that fact beyond a reasonable doubt.' . . . This legal reasoning can be applied with equal force in the context of the standard of proof for termination of parental rights petitions . . . . Under this reasoning, while the court must have found by clear and convincing evidence the three elements of § 17a-112 (j), any subordinate facts that, together, led the court to the conclusion that those elements have been met need not be proven by that heightened standard of proof. We conclude, therefore, that the court improperly applied the heightened standard of proof of 'clear and convincing evidence' to a subordinate fact." (Citations omitted.) Id., 113–14.

Viewed in this light, the controlling issue as to the operative element of § 17a-112 (j) (3) (B) (i) is whether the petitioner has proven by clear and convincing evidence that the children were adjudicated neglected in a prior proceeding. DCF is not required to prove the facts that supported the neglect adjudication by clear and convincing evidence because those facts are not controlling on the issue of whether the adjudication was made, i.e., they are subordinate as to that issue. As these subordinate facts, to the extent relevant, may be proven by the lower preponderance of the evidence standard, the collateral estoppel doctrine may be

applied to preclude their relitigation. Thus, the exception to the doctrine of collateral estoppel that the respondent relies upon is inapplicable because the finding of neglect under § 17a-112 (j) (3) (B) (i) does not involve the application of different standards of proof in the manner she contends.

Out-of-state precedent supports this court's conclusion. In construing a similar termination of parental rights statute, the Supreme Court of Washington has also held that the facts of a prior neglect adjudication need not be relitigated in a termination action. *In re K.R.*, 128 Wn. 2d 129, 142, 904 P.2d 1132 (1995) ("[C]ontrary to the [respondents'] assertions, [the termination statute] does not require the State to reprove the facts supporting the dependency by clear, cogent, and convincing evidence. Allegations [1] and [2] only require the State to prove by clear, cogent, and convincing evidence that the children have been found dependent under [the dependency statute] and that dispositional orders have been issued. . . . It is indisputable that [the children] were found to be dependent and that dispositional orders were issued." [Citation omitted; footnote omitted.]).

The respondent's due process claim is addressed below, but a necessary point of emphasis is that "[t]he fact that constitutional rights are at stake in a case is not a reason, in itself, not to apply the doctrine of collateral estoppel. The principles of collateral estoppel apply to criminal cases, where the defendant's liberty is a stake. . . . Furthermore, collateral estoppel has been applied in child protection cases. In *In re Stephen M.* . . . for example, we stated that on the basis of relevant constitutional rights and public policy reasons, 'a trial court may not, in a subsequent proceeding, disregard and permit relitigation of, a factual or legal determination made or an issue decided in a prior proceeding. Such reconsideration . . . is unfair to the

petitioner, who represents the state's parens patriae interest, as well as unfair to the respondent parents and the children.'" (Citation omitted.) *In re Jah'za G.*, 141 Conn. App. 15, 28, 60 A.3d 392, cert. denied, 308 Conn. 926, 64 A.3d 329 (2013).

### C

### Constitutional Claim

A party who challenges the constitutionality of a statute bears a heavy burden. *State* v. *Rizzo*, 266 Conn. 171, 291, 833 A.2d 363 (2003). "[B]ecause a validly enacted statute carries with it a strong presumption of constitutionality, those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . . In construing a statute, moreover, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Internal quotation marks omitted.) Id. "In analyzing the constitutionality of a statute, the court will read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it." (Internal quotation marks omitted.) *In re Shane P.*, 58 Conn. App. 244, 254, 754 A.2d 169 (2000).

The question presented by the respondent's constitutional argument is whether § 17a-112 (j) (3) (B) (i) violates her due process rights because one of the elements of the statute authorizing termination of her parental rights requires proof by clear and convincing evidence that a neglect finding was made in a prior proceeding and does not require a relitigation of such findings in the termination proceeding. The Connecticut appellate courts have not addressed this precise question which presents itself as an issue of first impression.[8]

---

[8] In *In re Shyliesh H.*, 56 Conn. App. 167, 743 A.2d 165 (1999), the Appellate Court concluded that the rehabilitation standard used in the statute did not render that statute unconstitutionally void for vagueness on its face. "The statute as written and as interpreted by the Supreme Court and this court provides fair warning of the conduct necessary for personal rehabilitation

The fourteenth amendment to the federal constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ." U.S. Const., amend. XIV, § 1. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews* v. *Eldridge*, 424 U.S. 319, 333, [96 S. Ct. 893, 47 L. Ed 2d 18] (1976) . . . . In reviewing a procedural due process claim, we must first determine whether a protected liberty or property interest is involved. If it is, then we must determine the nature and extent of the process due." (Internal quotation marks omitted.) *In re Tayler F.*, 296 Conn. 524, 553, 995 A.2d 611 (2010).

The well settled law is that a due process liberty interest is implicated by state action seeking to terminate a person's parental rights. The United States Supreme Court has made it clear that "state intervention to terminate the relationship between [a parent] and [the] child must be accomplished by procedures meeting the requisites of the Due Process Clause. . . . [This is reflected in] this Court's historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment. . . .

"The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into

---

and further provides minimum guidelines for enforcement of the statute." Id., 181.

ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." (Citations omitted; internal quotation marks omitted.) *Santosky* v. *Kramer*, supra, 455 U.S. 753–54.

In deciding the standard of proof constitutionally required in termination cases, the court in *Santosky* used the three factor balancing test set out in *Mathews* v. *Eldridge*, supra, 424 U.S. 335. In particular, the court considered the nature of the interests at issue; the risk that the existing procedures would erroneously deprive a party of those interests; and the state's interest in using those procedures. The court concluded that "the fair preponderance of the evidence standard prescribed by [the state statute at issue] violates the Due Process Clause of the Fourteenth Amendment. . . . The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state. . . . Thus, at a parental rights termination proceeding, a near-equal allocation of risk between the parents and the State is constitutionally intolerable." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Santosky* v. *Kramer*, supra, 455 U.S. 768.

The court then considered possible alternatives and held that a "clear and convincing evidence" standard "adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process." Id., 769. The court added that the "determination of the precise burden equal to or greater than that standard is a matter of state law properly left to state legislatures and state courts." Id., 769–70. In light of this decision, Connecticut statutes were modified to indicate that the clear and convincing evidence standard applied to termination of parental

rights proceedings. See *In re Juvenile Appeal (83-AB)*, supra, 189 Conn. 60.[9]

To repeat, the statute at issue here, § 17a-112 (j), provides in relevant part: "The Superior Court . . . may grant a petition [for termination of parental rights] if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court . . . to have been neglected or uncared for in a prior proceeding . . . and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

As previously stated, the courts have recognized that parents have a "fundamental liberty interest . . . in the care, custody, and management of their [children]

<hr>

[9] In 1982, when *Santosky* was decided, termination of parental rights trials in Connecticut were governed by General Statutes (Rev. to 1981) §§ 17-43a, now § 17a-112, and 45-61f, now § 45a-717, neither of which stated the standard of proof that applied to such a proceeding. Instead, courts relied on Practice Book (1978) § 1049, now § 32a-3, which provided in relevant part: "The hearing on such application shall be in accordance with and conform to the provisions of [sections] 1039 through 1043," which applied to neglect proceedings. Section 1043 provided: "The allegations of a neglect petition shall be proved, as in a regular civil proceeding, by a fair preponderance of the evidence." After *Santosky* was decided, the legislature enacted Public Acts 1982, No. 82-202, § 1, which amended both §§ 17-43a and 45-61f to add that the standard of proof that applies to termination trials is "upon clear and convincing evidence . . . ." In addition, § 1049 of the rules of practice was amended "to require clear and convincing evidence to terminate parental rights." *In re Juvenile Appeal (84-AB)*, supra, 192 Conn. 257 n.4.

. . . ." *Santosky* v. *Kramer*, supra, 455 U.S. 753. Therefore, "[b]efore a parent can be deprived of her right to the custody, care, and control of her child . . . she is entitled to due process of law." (Internal quotation marks omitted.) *In re Tayler F.*, supra, 296 Conn. 553–54. Nevertheless "[t]hat right . . . is not absolute. The welfare of children is [also] a matter of State concern." (Internal quotation marks omitted.) Id., 553.

The court must evaluate the nature and extent of the process that is due in order to determine whether the respondent's procedural due process rights are violated when a court, in a termination proceeding, relies on a prior neglect adjudication. As in *Santosky*, this determination is governed by the balancing test set forth by the United States Supreme Court in *Mathews* v. *Eldridge*, supra, 424 U.S. 335. See *In re Tayler F.*, supra, 296 Conn. 554. Under this test, "[a] due process violation exists only when a claimant is able to establish that he or she was denied a specific procedural protection to which he or she was entitled. The type and quantity of procedural protection that must accompany a deprivation of a particular property right or liberty interest is determined by a balancing test, weighing (1) the individual interest at stake; (2) the risk of an erroneous deprivation of the interest through the procedures used and probable value, if any, of additional or substitute procedural safeguards; and (3) the [s]tate's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail." (Internal quotation marks omitted.) Id. "Phrased differently, we must determine if the private interest of the respondent in the companionship, love and control of her [children] is at risk of being erroneously terminated because of the lack of an adequate procedural safeguard that could be provided for her without disregarding the state's interest in the well being of the [children] and the fiscal and administrative

burden on the state." *In re Alexander V.*, 25 Conn. App. 741, 744–45, 596 A.2d 934 (1991), aff'd, 223 Conn. 557, 613 A.2d 780 (1992).

The following are key considerations in applying the *Mathews* balancing test to the procedures of § 17a-112 (j) (3) (B) (i). Under the statute, a parent's rights are not subject to termination because of the neglect finding itself or even because of the facts on which the neglect finding is based. The statute states that parental rights are subject to termination because of the parent's failure to achieve rehabilitation in *light* of the prior neglect finding. The prior neglect adjudication is an historical factor that finds significance in the present actions taken by the parent to rehabilitate herself. In essence, under the statutory scheme, the state is asking the following question: if a child has been in DCF custody for more than fifteen months because of a neglect finding, and if the parent has received rehabilitation assistance and reunification steps, when, if ever, will the parent achieve rehabilitation so that reunification can be achieved? The court concludes that this is a question which the state may ask within the strictures of due process without a relitigation of the facts of the prior neglect proceeding.

1

The first factor of the *Mathews* test, the respondent's private interest, weighs in her favor. Courts have recognized that "[a] petition to terminate parental rights threatens the respondent's constitutionally protected interest [in retaining her parental rights in her children]." (Internal quotation marks omitted.) *In re Kyara H.*, 147 Conn. App. 829, 849, 83 A.3d 1249, cert. denied, 311 Conn. 923, 86 A.3d 466 (2014); see also *Santosky* v. *Kramer*, supra, 455 U.S. 754–55. "[P]arents have a fundamental right to raise their children as they see fit, in the absence of neglect or abuse. . . . We have a

constitutional duty to ensure that, when that right has been curtailed, all relevant legal standards have been fully satisfied, and our deep concern for the children's interests in a stable home and family environment cannot deter us from fulfilling that duty." (Citation omitted; internal quotation marks omitted.) *In re Joseph W.*, 305 Conn. 633, 649–50, 46 A.3d 59 (2012).

2

The second factor, which requires the court to examine whether the use of the current procedure creates a risk of erroneously depriving the respondent of her rights and the viability of alternatives, does not weigh in the respondent's favor. First, our courts have recognized that the procedures that are in place have been developed with regard to the respondent's constitutional rights. The Appellate Court has noted: "To facilitate the state's parens patriae interest, the legislature has enacted a comprehensive [statutory] scheme to protect children who are at risk due to their parents' inability or failure to provide for their well-being. . . . The statutory scheme takes into consideration, however, the fundamental precept that [p]arents have a constitutionally protected right to raise and care for their own children. . . . The statutory scheme consists of a number of interrelated intermediate steps on a path that eventually may lead to the termination of parental rights. The adjudication of those intermediate steps yields factual findings and orders regarding behavior expected of parents to facilitate reunification of families, if possible, and provides a factual predicate for further proceedings." (Citations omitted; internal quotation marks omitted.) *In re Stephen M.*, supra, 109 Conn. App. 646–47. "Section [17a-112 (j) (3)] carefully sets out . . . [the] situations that, in the judgment of the legislature, constitute countervailing interests sufficiently powerful to justify the termination of parental rights in the absence of consent. . . . Because a respondent's

fundamental right to parent his or her child is at stake, [t]he statutory criteria must be strictly complied with before termination can be accomplished and adoption proceedings begun." (Citation omitted; footnote omitted; internal quotation marks omitted.) *In re Elvin G.*, 310 Conn. 485, 500–501, 78 A.3d 797 (2013).

Second, under the statute, termination of parental rights cannot be based solely on a prior finding of neglect. Moreover, the statutory scheme protects against the risk of erroneous termination of parental rights by the careful crafting of the manner in which the prior neglect finding may be considered. A prior neglect adjudication can only serve as a basis for the termination of the respondent's parental rights if DCF also establishes all of the following by clear and convincing evidence: DCF made reasonable efforts to reunify the parent with the children; the child has been in DCF's custody for more than fifteen months; the parent was provided with specific steps to take to facilitate the return of the children to her; the parent failed to achieve a such a degree of rehabilitation that would encourage a belief that she could assume a responsible position in the life of the child within a reasonable period of time; and termination of her parental rights is in the best interest of the child. General Statutes § 17a-112 (j). As discussed below, each of these elements implicate, inter alia, the circumstances of the neglect adjudication.

In regard to whether DCF made reasonable efforts to reunify the respondent with the children, the court considers the steps and services that were offered to the respondent in relation to the finding of neglect. "The reasonableness of the department's efforts must be assessed in the context of each case. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of

proof. . . . [R]easonableness is an objective standard . . . and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case. (Internal quotation marks omitted.) *In re Kyara H.*, supra, 147 Conn. App. 872–73. These circumstances necessarily include the facts that led to the adjudication of neglect.

The specific steps are significant in considering both the reunification efforts made by DCF and the actions needed by the parent to achieve rehabilitation. "In the prior neglect proceeding conducted pursuant to [General Statutes] § 46b-129, where the court places the child in the custody of a suitable agency or person, 'the court shall provide to the commissioner and the parent of the child . . . specific steps which the parent may take to facilitate the return of the child . . . to the custody of such parent. . . .' General Statutes . . . § 46b-129 (b) [now § 46b-129 (j) (3)]. Personal rehabilitation, [as used in § 17a-112 (j) (3) (B)], therefore, is to be determined, in part, by compliance with those specific steps, which give the parent fair warning of what is required." (Footnote omitted.) *In re Shyliesh H.*, 56 Conn. App. 167, 179, 743 A.2d 165 (1999).

"[S]pecific steps are statutorily required . . . as part of an adjudication of neglect." *In re Elvin G.*, supra, 310 Conn. 504. After a child is adjudicated as neglected, "[s]pecific steps provide notice and guidance to a parent as to what should be done to facilitate reunification and prevent termination of rights." Id., 507–508. "Section 17a-112 (j) (3) (B) allows for the termination of parental rights due to a respondent's failure to achieve personal rehabilitation only after the respondent has been issued specific steps to facilitate rehabilitation. . . . The specific steps are a benchmark by which the court will measure the respondent's conduct to determine whether termination is appropriate pursuant to

§ 17a-112 (j) (3) (B)." (Citations omitted; internal quotation marks omitted.) *In re Shane M.*, 148 Conn. App. 308, 329, 84 A.3d 1265, cert. granted on other grounds, 311 Conn. 930, 86 A.3d 1056 (2014).[10]

The court's determination of the element of adequacy of the respondent's rehabilitation also requires the court to consider the history of the family's circumstances. Again, the statute requires the petitioner to prove the element of insufficient rehabilitation by clear and convincing evidence. "Section 17a-112 [(j)] (3) (B) requires the court to determine whether the degree of [the respondent's] rehabilitation . . . encourage[s] the belief that within a reasonable time . . . such parent could assume a responsible position in the life of the child . . . . Personal rehabilitation refers to the reasonable foreseeability of the restoration of a parent to his or her former constructive and useful role as a parent . . . . In conducting this inquiry, the trial court must analyze the respondent's rehabilitative status as it relates to the needs of the particular child . . . . The trial court must also determine whether the [respondent's] prospects for rehabilitation can be realized within a reasonable time given the age and needs of the child." (Internal quotation marks omitted.) *In re Jah'za G.*, supra, 141 Conn. App. 32.

"In order for the court to make a determination as to the respondent's prospects for rehabilitation, the court [is] required to obtain a historical perspective of the respondent's child caring and parenting abilities. . . . Because the parent-child relationship is at issue, all relevant facts and family history should be considered by the trial court when deciding whether to terminate the respondent's parental rights. . . . The parent-child relationship presents an ongoing dynamic that

[10] It is noted that a parent's "completion or noncompletion [of the specific steps], however, does not guarantee any outcome. A parent may complete all of the specific steps and still be found to have failed to rehabilitate." *In re Elvin G.*, supra, 310 Conn. 508.

cannot be frozen in time. The entire picture of that relationship must be considered whenever the termination of parental rights is under consideration by a judicial authority." (Internal quotation marks omitted.) *In re Christopher B.*, 117 Conn. App. 773, 787, 980 A.2d 961 (2009). The circumstances that led to the neglect adjudication will clearly be relevant to these issues.

Lastly, the court must determine whether the petitioner has proven, again by clear and convincing evidence, "that the continuation of the respondent's parental rights is not in the best interest of the child." (Internal quotation marks omitted.) *In re Alison M.*, 127 Conn. App. 197, 211, 15 A.3d 194 (2011). "The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [his or her] environment. . . . In arriving at this decision, the court is mandated to consider and [to] make written finding regarding seven factors delineated in [§ 17a-112 (k)]." (Internal quotation marks omitted.) Id. As explained above, the following statutory factors may implicate the conditions that led to the neglect adjudication: "(1) The timeliness, nature and extent of services offered . . . (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents . . . (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future . . . ." General Statutes § 17a-112 (k).

In summary, the current statutory scheme adequately insures that the respondent will not erroneously be deprived of her relational interest with her children merely because the neglect adjudication element of § 17a-112 (j) (3) (B) was decided under a lower standard of proof. The finding that the children have been adjudicated as neglected is merely one of the factors that must be proven by clear and convincing evidence. The Colorado Supreme Court stated the following in discussing the issue in the context of that state's termination statute, which, like § 17a-112 (j) (3) (B), depends on a previous adjudication of neglect to which a lower standard of proof applies: "It is difficult to conceive any set of circumstances under which the standards for termination of parental rights under [the particular statute] could be met and yet the criteria for adjudication of a child as neglected or dependent would not also be satisfied. Surely if the parent is unfit and likely to remain so . . . a child in the care of that parent . . . would be in an environment . . . injurious to his welfare . . . and therefore dependent or neglected. . . . A child in the care of such a parent must necessarily be neglected or dependent because his parent fails or refuses to provide proper or necessary subsistence, education, medical care, or any other care necessary for his health, guidance, or well-being. . . .

"By requiring that clear and convincing evidence support findings on the termination criteria . . . we accomplish the substantial equivalent of requiring that the child be determined to be neglected or dependent at the time of the termination proceeding. At that time, whether the facts supporting the original dependency or neglect proceeding were accurately found is largely a question of historical interest. The consideration of overriding importance is whether at the time of the termination proceeding severance of the parent-child

ties is appropriate. We hold that under Colorado's statutory scheme the accuracy of the findings of fact underlying the original adjudication of dependency or neglect does not approach critical significance in determining this question. Thus, the risk of error in an accurate determination of these facts is not a matter of central importance in the termination proceeding." (Citations omitted; footnote omitted; internal quotation marks omitted.) *In the Interest of A. M. D.*, 648 P.2d 625, 638–39 (Colo. 1982) (en banc).

Courts in two other jurisdictions have come to the same conclusion. The Appellate Court of Washington explained the following about that state's termination statute. "The Washington parental rights termination statutes require clear, cogent and convincing evidence of not only a prior determination that the parent has fallen below minimal standards . . . but of the fact that parental deficiencies still exist which are not likely to be remedied so that the child can be returned to the parent in the near future . . . . The termination decision must be predicated upon present parental unfitness." (Citations omitted.) *Krause* v. *Catholic Community Services*, 47 Wn. App. 734, 742, 737 P.2d 280, review denied, 108 Wn. 2d 1035 (1987). "[A] prior dependency finding is only one factor to be considered in determining whether to deprive a parent of all parental rights. . . . Other [termination] allegations which must be proven by clear and convincing evidence are that the parent was offered or provided reasonably available necessary services capable of correcting the parental deficiencies within the foreseeable future and that it is unlikely that conditions will be remedied so that the child can be returned to the parent in the near future." Id., 741–42. "Thus at the time of the termination hearing the accuracy of the facts underlying the original dependency adjudication is not critical, and the risk of

error in finding the underlying facts at the termination hearing is not of central importance." Id., 743.

Similarly, the Appellate Court of Illinois stated the following about Illinois' procedures for termination of parental rights. "[R]espondents misapprehend the nature of the court's termination findings. The court is not finding respondent father unfit based on that earlier conduct [which led to the neglect adjudication]. Rather, the court's findings were based on new conduct. That conduct is the failure of the father to make reasonable efforts and reasonable progress toward the return of [the minor] within 12 months after the earlier adjudication [of neglect]. . . . It is to this determination that the clear and convincing standard applies. The first finding is only relevant as a starting point for the 12 months. Thus, the proper standard was applied and there can be no argument, based on father's failure to receive the requested counseling, that the determination of the court's . . . finding him unfit is correct." (Citation omitted; internal quotation marks omitted.) *In re S.A.*, 296 Ill. App. 3d 1029, 1032, 696 N.E.2d 368 (1998).

The second element of the *Mathews* test also includes a consideration of the " 'probable value, if any, of additional or substitute procedural safeguards' . . . ." *In re Tayler F.*, supra, 296 Conn. 554. The respondent suggests, as an alternative to the present procedure, that in a termination proceeding brought pursuant to § 17a-112 (j) (3) (B) (i), the trial court should relitigate the facts of the underlying neglect proceeding, and determine whether the neglect finding can be proven by clear and convincing evidence. As previously discussed, the value of requiring the court to reconsider whether the child was neglected in the termination proceeding under the clear and convincing standard of proof is minimal. This is true not only because of the minimal risk of erroneous termination under the statutory scheme without such a relitigation, but also because

the predominant focus of the termination proceedings is on the efforts of reunification and rehabilitation occurring since the neglect finding.

On the other hand, the negative impact of such a relitigation could be procedurally significant. The termination proceeding may occur at a significant length of time after the filing of the original neglect petition when the evidence and witnesses are more difficult to locate and when memories may have faded. Moreover, because of the duplicative nature of a relitigation, such a procedure may either encourage DCF to meet the clear and convincing standard in every neglect adjudication to avoid having to do so again if the matter eventually progresses into a termination proceeding or to file early or premature coterminous proceedings, potentially increasing both time and expense.[11] Consequently, the adversarial nature of the relationship between DCF and the parents may become heightened early in the matter, which, in turn, may negatively impact DCF's ability to work with parents to correct the conditions that prompted the allegations of neglect. See *In the Interest of A. M. D.*, supra, 648 P.2d 640.

### 3

The third and final factor of the *Mathews* test requires the court to weigh the " 'the [s]tate's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail.' " *In re Tayler F.*, supra, 296 Conn. 554. "Two state interests are at stake in parental rights termination proceedings—a parens patriae interest in pre-

---

[11] Our Supreme Court has applied due process principles to the preponderance of the evidence standard in neglect actions and "concluded that 'the fair preponderance of the evidence standard of proof is the proper standard in neglect proceedings because any deprivation of rights is reviewable and nonpermanent and therefore the private interests involved are relatively balanced between the safety of the child and combined family integrity interests of parent and child.' . . . *In re Juvenile Appeal (84-AB)*, [supra, 192 Conn. 264–65]." *In re Joseph W.*, supra, 305 Conn. 644.

serving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings. . . . Since the State has an urgent interest in the welfare of the child, it shares the parent's interest in an accurate and just decision at the factfinding proceeding. . . . As parens patriae, the State's goal is to provide the child with a permanent home. . . . Yet while there is still reason to believe that positive, nurturing parent-child relationships exist, the parens patriae interest favors preservation, not severance, of natural familial bonds." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Santosky* v. *Kramer*, supra, 455 U.S. 766–67; see also *In re Jonathan M.*, 255 Conn. 208, 231, 764 A.2d 739 (2001) ("The government's interests in a termination proceeding . . . are twofold. First, the state has a fiscal and administrative interest in lessening the cost involved in termination proceedings. . . . Second, as parens patriae, the state is also interested in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected child." (Internal quotation marks omitted.). The present statutory procedures balance and advance both of these interests.

The welfare and safety of the child are promoted by the provisions of the present child protection statutory scheme. The neglect statute allows the state to assume temporary responsibility for the custody and care of a neglected child under the lower, preponderance of evidence standard of proof while the state provides the child's parents with support and services aimed at reuniting them with the child. The neglect procedures allow the parents time to accomplish this goal, but cautions them that if they fail to take the necessary steps and correct the conditions that led to the finding of neglect within a reasonable time, or if their circumstances otherwise warrant, the state may seek to terminate their parental rights. Thus, the statutory scheme

promotes the state's interests in preserving familial bonds and assuring the safety of the child, while the state works toward its goal of "provid[ing] the child with a permanent home." *Santosky* v. *Kramer*, supra, 455 U.S. 766.

"A finding of neglect is an integral part of the statutory scheme to protect the welfare of children and the parents' right to the custody and care of their children. . . . In a neglect proceeding, the commissioner of children and families acts . . . for the state as parens patriae, to ensure, first and foremost, the child's safety and, second, a permanent placement of the child as expeditiously as possible. . . . An adjudication of neglect has a concomitant purpose: it requires the court to issue specific steps to facilitate the reunification of the parent and child. . . . Although the specific steps provide a benchmark by which the court measures whether either reunification or termination of parental rights is appropriate, the court necessarily will consider the underlying adjudication and the attendant findings. . . . Therefore, the adjudication and findings serve a dual function—they provide a context to the court for the specific steps and they provide notice to the parents of issues that may be relevant to the court in determining a permanent plan for the child's custody." (Citations omitted; internal quotation marks omitted.) *In re Stephen M.*, supra, 109 Conn. App. 660–61.

As previously discussed, the state's interest in accurate and just termination decisions is promoted by requiring the petitioner to prove each element of § 17a-112 (j) (3) (B) (i) by clear and convincing evidence. Imposing the additional requirement that the petitioner also prove the allegations of neglect under the clear and convincing standard of proof at the termination trial would impose additional administrative and fiscal

burdens upon the state. Specifically, "[d]uring the adjudicatory phase [of a neglect proceeding] . . . the judicial authority is limited to evidence of events preceding the filing of the [neglect] petition . . . ." (Internal quotation marks omitted.) *In re Etta H.*, 146 Conn. App. 751, 763, 78 A.3d 295 (2013). As previously mentioned, the termination proceeding may occur long after the events leading to the neglect adjudication occurred. Thus, the state might be faced with the additional burdens of locating additional witnesses and other evidence if it were required to prove the neglect element by clear and convincing evidence at the termination proceeding.

4

In conclusion, the application of the balancing test required by *Mathews* v. *Eldridge*, supra, 424 U.S. 319, establishes that the provisions of § 17a-112 (j) (3) (B) (i) adequately protect the respondent's interest in the integrity of her relationship with her child. The risk of an erroneous deprivation of that interest under the statute is minimal and will not be measurably decreased by the use of the alternative that the respondent proposes.

The totality of the statutory scheme comports with the requirements of due process, as it effectively serves and balances the interests of both the state and the parents in the accurate and just resolution of the termination litigation. The statute requires DCF to prove that the parent failed to achieve rehabilitation after a finding that the child is neglected and after the child has been removed from the custody of the parents for a significant period of time and the parent has been provided with specific steps to facilitate the return of the child. This neglect finding is premised on an adversarial adjudication with rights of appeal. Furthermore, the statutory procedures require DCF to prove that it made

reasonable efforts to assist the parent in rehabilitation or that the parent is unable or unwilling to benefit from such efforts.

The respondent's constitutional argument is premised on an unduly narrow and superficial analysis of the statute. Under § 17a-112 (j) (3) (B) (i), the ground for termination is not premised solely on the finding of neglect. The emphasis and focus of the statutory scheme are on what the parent has done or failed to do in *response* to a final and conclusive finding of neglect. Specifically, when a finding of neglect has been made, and the child has been in DCF's custody for at least fifteen months, and the parent has received specific steps and been provided with the opportunity to engage in appropriate services to facilitate reunification, then the statute asks, whether, under these circumstances, DCF has proven, by clear and convincing evidence, the parent has failed to achieve "personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position" in the child's life. General Statutes § 17a-112 (j) (3) (B) (i). The respondent has not met the heavy burden of establishing that this statutory scheme is unconstitutional beyond a reasonable doubt, and therefore, her motion to strike on this ground must be denied.

## CONCLUSION

For the foregoing reasons, the respondent's motion to strike is denied and the petitioner's objection is sustained.