******************************************************************

   The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

   This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

Bright, C. J., and Prescott and DiPentima, Js.

*Syllabus*

The respondent mother appealed to this court from the judgments of the trial court adjudicating her minor children neglected. On appeal, the mother claimed that the court violated her rights to due process when it denied a motion for permission to call the two older children as witnesses that had been filed by the respondent father. Specifically, the mother claimed that the trial court employed an improper standard of proof when it denied the motion in part on the ground that it would not be in the "best interests" of the children. *Held* that the respondent mother's appeal was dismissed as moot, as the mother failed to challenge all of the bases for the trial court's denial of the motion for permission to call the children as witnesses: the record is clear that the court relied on two grounds in denying the motion, that it was not in the best interests of the children and that it was untimely and, as the mother failed to challenge this second independent basis for the court's decision denying the motion, this court could not afford her any practical relief; moreover, this court declined the mother's request to vacate that part of the trial court's judgment that found that it would not be in the best interests of the children to testify in order to clarify the correct legal standard that should be employed by the Superior Court in adjudicating motions for child testimony in a neglect proceeding, the mother having provided no authority that would permit this court to use the equitable remedy of vacatur to essentially render an advisory opinion in an appeal that was otherwise moot.

Argued March 23—officially released May 17, 2021**

*Procedural History*

Petitions by the Commissioner of Children and Families to adjudicate the respondent parents' minor children neglected, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Kavanewsky, J.*, denied the respondent father's motion for permission to call certain of the minor children as witnesses; thereafter, the court adjudicated the minor children neglected and committed the minor children to the custody of the petitioner, from which the respondent mother appealed to this court. *Appeal dismissed.*

*Albert J. Oneto IV*, assigned counsel, for the appellant (respondent mother).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Evan O'Roark* and *Mildred Bauza*, assistant attorneys general, for the appellee (petitioner).

*Opinion*

BRIGHT, C. J. The respondent mother, Elizabeth T.,[1] appeals from the judgments of the trial court adjudicating each of her three children, ages nine, seven, and three, neglected, and the two older of those children, abused, and vesting temporary custody of the children in the petitioner, the Commissioner of Children and Families.[2] On appeal, the respondent claims that the court violated her right to the due process of law when it denied the motion for permission to call the two older minor children as witnesses, which was filed by the respondent father and later joined by the respondent.[3] Following the parties' appellate oral argument, we requested supplemental briefs addressing whether the respondent's claim was moot in light of her failure to challenge one of the independent grounds of the trial court's denial of the motion to have the two older children testify.[4] Having considered the supplemental briefs of the parties[5] and the record in this case, we conclude that the respondent's claim is moot. Accordingly, we dismiss the appeal.

The following facts, as found by the trial court and that are uncontested for purposes of this appeal, and procedural history are relevant. The respondent has a long history of substance abuse, and she previously had been convicted and incarcerated on a federal drug distribution offense. In April and May, 2019, she saw a mental health and substance abuse treatment provider, who, on May 17, 2019, made a mandated referral to the Department of Children and Families (department) on the basis of several events that had been reported to her by the respondent, which alleged violence in the home toward the children. The department thereafter attempted to investigate these allegations, but encountered great hostility from both of the children's parents, but especially from the respondent. On May 31, 2019, the department went to the school of the two older children, who then reported abuse and neglect to the department. The department then offered services to the family, but the respondent and the respondent father refused to cooperate.

On June 4, 2019, the petitioner filed ex parte motions for orders of temporary custody and neglect petitions in the interest of the minor children alleging ongoing concerns of intimate partner violence, substance abuse, unresolved mental health concerns, and excessive physical discipline of the children. On June 4, 2019, the court granted the ex parte motions for orders of temporary custody, finding that the children were in danger of immediate physical harm. The court vested temporary custody of the minor children in the petitioner.

Between November, 2019, and February, 2020, the court conducted a consolidated trial on the issue of temporary custody in the neglect petitions. During the

presentation of her case, the petitioner called a number of witnesses who testified about their interactions with the children, and about statements made by the children regarding the neglect and abuse they had endured at the hands of the respondent and the respondent father. The petitioner also introduced exhibits that similarly recounted statements made by the children regarding the respondent and the respondent father. On February 3, 2020, after the petitioner had rested her case and the time designated for the disclosure of witnesses had passed, the respondent father filed a motion for permission to have the two older minor children testify. The respondent joined in the motion at the time that it was heard, on February 6, 2020. The court found that the motion had been filed untimely, and it also found that having the children testify would be contrary to their best interests and detrimental to their welfare. Accordingly, the court denied the motion. The respondent presented her witnesses and her evidence on February 7, 2020.[6]

On February 14, 2020, the petitioner filed a motion for a psychological evaluation of the family. The respondent did not oppose the petitioner's motion, and, in fact, she consented to the motion, which the court granted after a hearing.

On February 28, 2020, the court adjudicated the minor children neglected, and it found that the two older minor children also had been abused. The court ordered that all three of the children be committed to the temporary custody of the petitioner.[7] This appeal followed. Additional facts and procedural history will be set forth as necessary.

The respondent claims that the court violated her right to due process of law when it denied, on the ground that it was not in the children's "best interests" to testify, the respondent father's motion for permission to call the two older minor children as witnesses, which motion she had supported. The respondent contends that the court employed an improper standard of proof when it "denied her the right to question her children at trial about [their] hearsay statements admitted into evidence based solely on a finding that it would not be in the children's 'best interests' to testify."[8] She contends that the court needed to find, by clear and convincing evidence, that it would be emotionally harmful to the children to testify and that the harm outweighed the probative value of their potential testimony. Recognizing that she did not preserve at trial this alleged constitutional issue, the respondent requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[9]

In her appellate brief, the petitioner sets forth several reasons for rejecting the respondent's claim.[10] She argues that this claim is not constitutional in nature but, rather, that it is an evidentiary matter, and that

there can be no doubt that the court acted well within its discretion pursuant to Practice Book § 32a-4.[11] Additionally, the petitioner contended during oral argument before this court that the respondent failed to address the fact that the court also denied her motion on a second independent ground, namely, that it was untimely filed and without a showing of good cause. In the alternative, the petitioner also argues that, if we determine that the respondent's claim is reviewable and is of constitutional magnitude, the court did not violate the respondent's right to due process of law because it employed the proper standard when it found that permitting the children to testify would not be in their best interests and, in fact, would be detrimental to their interests.

As set forth in footnote 4 of this opinion, we requested supplemental briefs from the parties specifically addressing whether the respondent's claim was moot in light of her failure to challenge an independent ground for the trial court's denial of her motion to call the children to testify, namely, that the respondent father's motion for permission to call the two older minor children as witnesses was untimely. After considering the parties' supplemental briefs and the record in this case, we conclude that her claim is moot.

"Mootness raises the issue of a court's subject matter jurisdiction and is therefore appropriately considered even when not raised by one of the parties. . . . Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction. . . . We begin with the four part test for justiciability . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) *that the determination of the controversy will result in practical relief to the complainant.* . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the [petitioner] or [the respondent] in any way." (Citations omitted; emphasis in original; internal quotation marks omitted.) *In re Jorden R.*, 293 Conn. 539, 555–56, 979 A.2d 469 (2009) (*Jorden R.*).

In *Jorden R.*, our Supreme Court, sua sponte, vacated the judgment of this court after concluding that this court had lacked jurisdiction to review the merits of the respondent's appellate claim that the trial court had

erred in concluding that she was unable or unwilling to benefit from reunification efforts. Id., 554–55. Our Supreme Court determined that the respondent's claim was moot because she had failed to challenge on appeal a second alternative basis of the trial court's decision. Id., 555. Specifically, our Supreme Court explained: "[General Statutes] § 17a-112 (j) (1) requires a trial court to find by clear and convincing evidence that the department made reasonable efforts to reunify a parent and child *unless* it finds instead that the parent is unable or unwilling to benefit from such efforts. In other words, *either finding*, standing alone, provides an independent basis for satisfying § 17a-112 (j) (1). In this case, however, the trial court found that *both alternatives* had been satisfied—the court found that the department had made reasonable efforts to reunify the respondent and Jorden *and* that the respondent was unwilling and unable to benefit from reunification services. . . . In light of the trial court's finding that the department had made reasonable efforts to reunify the respondent with Jorden and the respondent's failure to challenge that finding, the Appellate Court's decision, which disturbed only the trial court's finding that reunification efforts were not required, cannot benefit the respondent meaningfully." (Emphasis altered; footnote omitted.) Id., 556. Accordingly, our Supreme Court concluded that the respondent's claim was moot because the Appellate Court could not have afforded her practical relief. Id., 557.

In the present case, the respondent argues that the ruling of the trial court has to be reviewed in total and that the issue of timeliness is part and parcel of her due process claim and cannot be viewed as an independent basis for the denial of the respondent father's motion. The respondent further argues that "[t]he trial court's comments about the motion's untimeliness were . . . obiter dicta, lacking the force of an adjudication" in that the court did not deny the motion on the ground that it was untimely because the court, on January 10, 2020, "gave [her] permission to produce any dispositional evidence she wished on the last day of trial." Finally, she argues that, even if her claim is moot, we should exercise our equitable power of vacatur to correct the trial court's application of an incorrect legal standard to the respondent father's motion.

The petitioner responds that the respondent did not raise a due process claim at trial, and it is clear that the court voiced two alternative grounds for denying the respondent father's motion to call the older children to testify, namely, "(1) subjecting the children to interrogation by the respondent mother at trial would be detrimental to their welfare because of the trauma they endured in the . . . care [of the respondent and the respondent father]; and (2) the motion to call the minor children was untimely filed and there was no good cause for the late filing." The petitioner argues that "[e]ither

of these grounds—that it was detrimental to these emotionally fragile children to testify *and* the extreme tardiness of the motion—provides an independent basis to affirm the trial court's decision on the motion to call children witnesses." (Emphasis in original.) We agree with the petitioner.

As required by the standing orders for the child protection docket of the Juvenile Matters session of our Superior Court, the petitioner and the respondent each filed their trial management memoranda on November 1, 2019.[12] The respondent father, however, did not file a trial management memorandum. On November 13, 2019, the petitioner notified counsel for the parties that she intended to offer into evidence the exhibits containing the statements of the children. The trial in this matter commenced on November 15, 2019. During the petitioner's presentation of her case, she called a number of witnesses who testified about the children and their statements alerting the witnesses to the neglect and abuse they had suffered at the hands of the respondent and the respondent father. The petitioner also introduced exhibits that similarly recounted statements made by the children regarding the respondent and the respondent father. Much of this evidence was admitted without objection. On January 10, 2020, the petitioner rested her case, with the exception of one exhibit, which the parties were working to redact by agreement. The trial court file and the transcript from that date indicate that the respondent's behavior during that day's proceedings "was nearly contemptuous." Near the end of the hearing, the court asked the respondent and the respondent father whether they were going to call witnesses. Counsel for the respondent father stated that he did not know. Counsel for the respondent replied in the affirmative. Nevertheless, at no time before the petitioner rested, even after hearing and seeing the petitioner's evidence recounting statements attributed to the children, did the respondent give any indication that she wished to call any of the children as witnesses; she also did not argue that the children's hearsay statements were admissible only if she was permitted to cross-examine them about those statements. The court continued the matter to February 7, 2020.

On February 3, 2020, nearly one month after the petitioner had rested her case and long after the date for disclosure of witnesses set forth in the trial management orders, the respondent father filed a motion for permission to have the two older minor children testify. See Practice Book § 32a-4. He represented that the children would testify that the allegations of neglect were not accurate. The petitioner objected to the motion on the grounds that it was late, that it would be prejudicial to the petitioner to grant the motion nearly one month after she had rested her case, and that it would be "detrimental and emotionally harmful to the [older] minor children," who were seven and nine years old at

the time.[13] The respondent joined in the respondent father's motion on February 6, 2020, during oral argument. Neither the respondent nor the respondent father offered any reason for the late filing of the motion, despite the petitioner's objection, which included that specific ground.

During the February 6, 2020 hearing, the petitioner argued in part that the motion was untimely and that it would be prejudicial to the petitioner if it were granted. She explained that she already had presented all of her evidence, that the evidence concerning the children's statements was admitted, primarily without objection, through the business records exception to the hearsay rule applicable to the records of the department and the children's school. Specifically, the petitioner's counsel argued: "Then it's prejudicial in that we've already presented the evidence and had there been notice of this and generally—well, let me start with, first, none of the evidence that was presented relied on the unavailability of the children. The exhibits that were and the information that was admitted was admitted through business record[s] of [the department], the business record[s] of the school as mandated reporters . . . . So, the admission of the statements by the children came in not through the residual that may trigger as in *In re Taylor F.*, [296 Conn. 524, 544–47, 995 A.2d 611 (2010)], a separate hearing on the availability of the witnesses, the psychological availability of the witnesses, but, had the court wished to address that, we've been foreclosed as our evidence has closed on that. And, generally, as I said, those are usually hearings that are held before trial commences or addressed during trial through the witnesses that are being called." See *In re Taylor F.*, supra, 544 ("a trial court properly may conclude [after an evidentiary hearing] that a child is unavailable if there is competent evidence that the child will suffer psychological harm from testifying . . . [but] [t]he court's determination must be based . . . on evidence specific to the child and the circumstances").

In its oral ruling during the February 6, 2020 hearing, the court stated that it did not think that it was in the children's best interests to testify, and it explained that it did not want its ruling "to hang all on the linchpin of timeliness so that's why [it] address[ed] the . . . best interest first . . . . The [petitioner] has rested and this is why we have trial management orders that review or require parties to set forth who their witnesses are. I understand *that may change for good cause from time to time* but I can't think of anything that would have suddenly [leapt] out from what has been presented and the material presented now that would not have been apparent before. So I am going to deny the [respondent] father's motion." (Emphasis added.) The court's written comments, contained in the trial court file for that date, specifically provide: "Court determines it would not be

in best interest of children to be called to testify in this case. Also, motion is untimely."

Despite this record, the respondent argues that we should disregard the trial court's statements that it was denying the respondent father's motion for permission to call the children as witnesses on the ground that the motion was untimely and without a showing of good cause excusing the lateness. She contends that (1) her appellate brief, although not specifically addressing the lateness of the motion and the failure to demonstrate good cause, was a complete attack on the court's decision, including this ground, (2) the court's statement about the lateness of the motion and the failure to argue good cause was not actually a basis for the court's denial of the motion, and (3) we should exercise our equitable powers to vacate the court's judgment. We consider each of these reasons in turn.

First, the respondent argues that her challenge to the trial court's order denying the motion was "a complete attack *in toto* on the validity of the trial court's order precluding her from questioning her children at the trial on the neglect petitions." She further argues that, consequently, "[t]he appropriate treatment of the trial court's comments about the motion's timeliness is not as an independent ground upon which to affirm the judgment. Rather, this court must 'closely examine' any and all procedural reasons advanced by the trial court in support of its ruling as part of the due process balancing test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)." We are not persuaded.

The respondent's argument requires us to interpret the court's order. "As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The legal effect of an order must be declared in light of the literal meaning of the language used. The unambiguous terms of [an order], like the terms in a written contract, are to be given their usual and ordinary meaning. . . . [An order] must be construed in light of the situation of the court, what was before it, and the accompanying circumstances." (Citation omitted; internal quotation marks omitted.) *In re Jacklyn H.*, 162 Conn. App. 811, 830, 131 A.3d 784 (2016).

Both in its oral ruling and in its written comments following the hearing on the respondent father's motion, the court provided two bases for denying the motion. The court first determined that it was not in the children's best interests to testify and explained its reasoning for reaching that conclusion. Second, the court stated that the motion was untimely and explained why it was denying the motion due to its late filing. It is clear to us from the language used by the court that it concluded that both of the stated reasons constituted independent bases to deny the respondent father's motion.

The respondent does not claim, nor could she, that she argued in her principal brief on appeal that the court deprived her of due process because it relied on the deadlines in its trial management orders to deny the respondent father's motion. Her principal brief attacked only the court's reliance on the best interests of the children as a ground for denying the motion. In fact, the respondent does not argue in her supplemental brief that the court's reliance on the deadlines in the trial management orders violated due process; nor could she, in good faith, because our law is to the contrary. See *Levine* v. *Hite*, 189 Conn. App. 281, 296, 207 A.3d 100 (2019) ("A trial court has the authority to manage cases before it as is necessary. . . . Deference is afforded to the trial court in making case management decisions . . . . The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . The ability of trial judges to manage cases is essential to judicial economy and justice." (Internal quotation marks omitted.)). Consequently, the respondent's suggestion that we should review a constitutional claim that she never raised and that finds no support in the law is without merit.

Second, the respondent argues that the court's comments regarding the timeliness of the respondent father's motion should be disregarded as "obiter dicta" because they were not material or necessary to the court's ruling. The respondent argues that the timeliness of the motion really was not an issue because "on January 10, 2020, the court gave the respondent permission to produce any dispositional evidence she wished on the last day of trial." We disagree.

The fact that the respondent may have had permission to present "any dispositional evidence" in her defense of the neglect petitions did not mean that she had a right to do so in contravention of the orders of the court or the rules of practice. The court at all times had the authority to limit the presentation of evidence based on its previous orders and the relevant rules. In any event, for the reasons previously discussed, the record is clear that the court relied on the untimeliness of the respondent father's motion as an independent ground for its denial on February 6, 2020. Thus, the court's reliance on the untimeliness of the motion was in no way "obiter dicta."

Finally, the respondent argues that we should exercise our power of "equitable vacatur" to prevent the trial court's ruling from becoming "misleading legal precedent." The respondent argues that, because the court improperly used the best interests of the children as a basis for denying the respondent father's motion, we should ignore the question of mootness and correct the court's purported error so that the appropriate test is applied in future cases should the question of whether

a parent has the right to compel their children to testify arise. We conclude that using the equitable remedy of vacatur in the manner suggested by the respondent is not appropriate. A review of our Supreme Court's prior application of this remedy is instructive.

In *In re Candace H.*, 259 Conn. 523, 525–26, 790 A.2d 1164 (2002), on which the respondent relies, the respondent mother had "appealed to the Appellate Court from the trial court's denial of her motion for visitation with the child. The Appellate Court reversed, in part, the judgment of the trial court, concluding that the trial court properly had denied the respondent's motion for visitation; *In re Candace H.*, 63 Conn. App. 493, 502, 776 A.2d 1180 (2001); but impermissibly had delegated to the department and to the child's foster parents 'its independent obligation to determine and further the child's best interest.' Id., 504." (Footnote omitted.) After our Supreme Court granted the department's petition for certification, the respondent voluntarily relinquished her parental rights, rendering the department's appeal to our Supreme Court moot. *In re Candace H.*, supra, 259 Conn. 526. The court concluded that the appeal should be dismissed as moot, but it, nevertheless, granted the department's request to vacate the Appellate Court's judgment to the extent that it reversed the trial court's decision empowering the department and the foster parents to determine the propriety of any future visitation. Id. The court provided no explanation for its decision to vacate the judgment of the Appellate Court other than to state that it was in the public interest to do so and noting that "[v]acatur is commonly utilized . . . to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." (Internal quotation marks omitted.) Id., 527 and n.5.

Similarly, in *In re Jessica M.*, 250 Conn. 747, 738 A.2d 1087 (1999), our Supreme Court, after a certified appeal in a termination of parental rights case became moot, granted the petitioner's motion "to vacate the judgments of the Appellate Court and the trial court . . . on the grounds that the appeal is now moot and the issues decided by those courts have not been subject to review by the Supreme Court." Id., 749. In both *In re Candace H.*, and *In re Jessica M.*, our Supreme Court employed the equitable remedy of vacatur to leave for another day resolution of an issue that it did not reach because the appeal in which it would have reached the issue had been rendered moot.

In the present case, the respondent is not asking us to vacate that part of the trial court's judgment that relied on the best interests of the children so that the question of the appropriate standard to apply to a motion for permission to call children as witnesses in a neglect proceeding can be addressed another day in another case. Instead, the respondent is asking us to

vacate the judgment of the trial court "in order to clarify the correct legal standard that should be employed by the Superior Court in adjudicating motions for child testimony under Practice Book § 32a-4." Essentially, the respondent is asking us to use the equitable remedy of vacatur to render an advisory opinion in an appeal that otherwise is moot. The respondent has cited no authority that permits us to do so, and we are aware of none. Furthermore, we conclude that vacatur is not appropriate in this case because the trial court's decision, unlike this court's decisions in *In re Candace H.* and *In re Jessica M.*, is not binding on the Superior Court. Thus, a parent defending against a neglect petition will be able to raise the same procedural arguments raised by the respondent in this case, and any decision regarding such arguments will be subject to review by this court and/or our Supreme Court. For these reasons, we reject the respondent's request that we employ the equitable remedy of vacatur in such an unprecedented manner.

Because the respondent challenges only one of the two separate and independent bases for the court's denial of the motion to call the two older minor children to testify, even if we were to agree that the court should not have considered the best interests of the children when considering the respondent father's motion, the fact that there is a second independent basis for upholding the court's determination, which she failed to challenge on appeal, renders us unable to provide her with any practical relief. On the basis of our plenary review of the record and the court's decision in this case, we conclude that the court utilized two independent grounds for denying the respondent's motion for permission to call the two older children to testify, one of which she has not challenged on appeal, rendering her challenge to the other independent ground moot.

The appeal is dismissed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** May 17, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The respondent father also was named a party in the trial court proceeding. He has not participated, however, in this appeal.

[2] The attorney for the minor children has adopted the appellate brief and the position of the petitioner.

[3] In her appellate brief, the respondent also claimed that the court abused its discretion by granting the petitioner's motion for a psychological evaluation of the family. During oral argument before this court, however, she withdrew that claim, on the basis of this court's decision in *In re Marcquan C.*, 202 Conn. App. 520, 246 A.3d 41, cert. denied, 336 Conn. 924, 246 A.3d 492 (2021), without prejudice to raising it during further trial court proceedings.

[4] Specifically, our order provided: "The parties are hereby ordered to file on or before April 9, 2021, supplemental briefs, not exceeding ten pages in length, addressing whether the respondent's first claim on appeal, that the court deprived her of due process of law when it denied her motion for permission to call her children to testify, is moot in light of the respondent's

failure to challenge the second ground of the trial court's decision, namely, that the motion was untimely and the respondent failed to establish good cause for its late filing. See, e.g., *In re Jorden R.*, 293 Conn. 539, 554–57, 979 A.2d 469 (2009) (claim is moot if appellant has not challenged all bases for trial court's decision)."

[5] The attorney for the minor children also adopted the supplemental brief of the petitioner.

[6] The respondent listed seventeen potential witnesses in her November 1, 2019 trial management memorandum, including herself and the respondent father. None of the children were on the list. On February 7, 2020, the respondent called several witnesses to testify. The respondent father, who had failed to file a trial management memorandum, stated that he had no witnesses to present. The respondent and the respondent father each chose not to testify.

[7] In its memorandum of decision, the court specifically stated that, although the cases had been consolidated for trial, it "considered each case separately and independently of the others" and it "considered the allegations against each respondent separately and independently."

[8] The respondent does not claim on appeal that the court improperly admitted into evidence the statements made by the minor children, the vast majority of which were admitted without objection.

[9] Pursuant to *Golding*, a defendant may prevail on a claim of constitutional error not preserved at trial only if all four of the following conditions are satisfied: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2019) (modifying third prong of *Golding* by eliminating word "clearly" before words "exists" and "deprived" (internal quotation marks omitted)).

[10] The respondent did not file a reply brief to respond to the petitioner's arguments.

[11] Pursuant to Practice Book § 32a-4 (b), "[a]ny party who intends to call a child or youth as a witness shall first file a motion seeking permission of the judicial authority."

[12] Standing Order 5 of the child protection docket for the Juvenile Matters session of our Superior Court provides in relevant part:

"5. Trial Management Procedures

"A. Four (4) weeks before any assigned trial date, all parties shall file trial memoranda intended to simplify and speed up a contested trial. The memoranda shall include the following:

"1. a summary of the petitioner's contentions and the respondent's defenses or oppositional grounds, together with a summary of settlement efforts;

"2. any pleadings or motions pending or to be filed;

"3. evaluations;

"4. admissions or stipulations;

"5. evidentiary disputes or judicial notice;

"6. (a) the name and address of each fact witness, (b) a summary of expected testimony and (c) the approximate length of time for direct testimony;

"7. (a) the name and address of each expert witness, (b) a resume or curriculum vitae, (c) a summary of the expected testimony and (d) the approximate length of time for direct testimony;

"8. a list of each pleading, motion, discovery matter, evaluation and evidence there is any dispute about or any outstanding matter, and a summary of the matter. . . ." Standing Orders for the Child Protection Docket for the Juvenile Matters session of the Superior Court (effective November 1, 2009), available at https://www.jud.ct.gov/external/super/StandOrders/Juvenile/juvenile childprot.pdf (last visited May 14, 2021).

[13] The guardian ad litem and the attorney for the children each filed a position letter objecting to the motion, as well.